1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| In re: | Appeal No. 18-T007 |
| | Appeal No. 18-T008 |
| FRASER'S BOILER SERVICE, INC. | |
| | (Consolidated) |
| Debtor. | Case No. 3:18-cv-05638 BHS |
| | |
| | Case No. 3:18-cv-05637-RBL (Lead Case) |
| In re: | |
| FRASER'S BOILER SERVICE, INC. | |
| Debtor. | |

**APPELLANTS' OPENING BRIEF**

(Oral argument requested)

APPELLANTS' OPENING BRIEF
Case Nos. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

DM1\9113136.2

## CORPORATE DISCLOSURE STATEMENT

**A.**     **National Union Fire Insurance Company of Pittsburgh, Pa**

National Union Fire Insurance Company of Pittsburgh, Pa. is a direct, wholly-owned (100%) subsidiary of AIG Property Casualty U.S., Inc., which is a wholly-owned (100%) subsidiary of AIG Property Casualty Inc., which is a wholly-owned (100%) subsidiary of AIUH LLC, which is a wholly-owned (100%) subsidiary of American International Group, Inc., which is a publicly-held corporation. No parent entity or publicly held entity owns 10% or more of the stock of American International Group, Inc.

**B.**     **Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "London Market Insurers") Certain Underwriters At Lloyd's London Have No Parent Company And No Publicly Held Company Owns More Than 10% Of Their Stock;**

1. Ageas Insurance Limited's parent company is Ageas SA/NV, which owns 100% of Ageas Insurance Limited;
2. Assicurazioni Generali S.P.A has no parent company and no publicly held company owns more than 10% of its stock;
3. Axa Global Risks (UK) LTD's (now known as Portman Insurance SE): no publicly held company owns more than 10% of its stock;
4. Catalina Worthing Insurance Ltd F/K/A HFPI's (As Part VII Transferee Of Excess Insurance Company Ltd) ultimate parent is Catalina Holdings (Bermuda) Ltd, which owns 100% of Catalina Worthing Insurance Ltd.;
5. Chevanstell LTD's (FKA Baltica-Skandinavia Insurance Company) transferred its insurance business to R&Q Insurance (Malta) Limited on January 13, 2014 and dissolved on May 23, 2014;
6. Colbourne Insurance Company Limited's parent company is El Paso Corporation, which owns 100% of Colbourne Insurance Company Limited;
7. Commercial Union Assurance Company PLC's (now Aviva International Insurance Limited) ultimate parent is Aviva plc, which owns 100% of Aviva International Insurance Limited;
8. Cornhill Insurance PLC's changed its name to Allianz Insurance plc on April 27, 2007. Allianz Insurance plc's parent is Allianz SE, which owns 100% of Allianz Insurance plc.;
9. Cornhill J A/C Including: Allianz International Insurance Company Limited and Cornhill Insurance PLC is Allianz SE and Allianz Holding plc and no publicly held company owns more than 10% of its stock;
10. Hansa Re & Marine Insurance Company (UK) Limited F/K/A Hansa Marine T GP Including: Hansa Marine Insurance Company (UK) Limited and Vesta (UK) Insurance Company Limited the parent company is Skandinaviska enskilda Banken AB and no publicly held company owns more than 10% of its stock;
11. Icarom PLC (Under Administration) (Formerly Insurance Corp of Ireland) is EIFLOW Insurance Ltd and no publicly held company owns more than 10% of its stock;

APPELLANTS' OPENING BRIEF
Case Nos. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

DM1\9113136.2

12. Insurance Company of North America (UK) Limited ultimately changed its name to Chubb European Group PLC on April 9, 2018. Chubb European Group PLC's parent is Chubb Limited, which owns 47.9% of Chubb European Group PLC;

13. Lombard Continental Insurance Company Limited's name was ultimately changed to KX Reinsurance Company Limited on May 8, 2007;

14. Norwich Union Fire Insurance Society Limited changed its name to Aviva Insurance UK Limited on June 1, 2009, which transferred its insurance portfolio to Aviva Insurance Limited on November 14, 2011. Aviva Insurance UK Limited's parent is Aviva plc, which owns 100% of Aviva Insurance UK Limited;

15. Ocean Marine Insurance Company Limited's parent is Aviva plc and no company owns more than 10% of its stock;

16. The Marine Insurance Company Limited in its own right and as Part VII Transferee of Sun Alliance Insurance UK Limited (f/k/a The British Law Insurance Company Limited) and PA(GI) Limited (f/k/a Phoenix Assurance Company Limited);

17. RiverStone Insurance (UK) Limited's ultimate parent is Fairfax Financial Holdings Limited, which owns 100% of RiverStone Insurance (UK) Limited;

18. Swiss Re Specialty (UK) Limited's ultimate parent is Swiss Re Ltd which owns 100% of Swiss Re Specialty (UK) Limited;

19. The Scottish Lion Insurance Company Limited is a subsidiary of National Indemnity Company, which in turn is a subsidiary of Berkshire Hathaway Inc. No other publicly held company owns 10% or more of this company's stock; and

20. The Yorkshire Insurance Company Limited parent is Aviva plc and no company owns more than 10% of their stock.

APPELLANTS' OPENING BRIEF
Case Nos. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

DM1\9113136.2

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES ......................................................................................... i

3   I.  INTRODUCTION ............................................................................................... 1

4   II.  JURISDICTIONAL STATEMENT .................................................................. 3

5   III.  ISSUES PRESENTED AND STANDARD OF REVIEW ................................ 4

6   IV.  STATEMENT OF THE CASE ......................................................................... 5

7        A.   Pertinent Factual and Procedural Background ........................................ 5

8             1.   Fraser's Boiler Service, Inc. ....................................................... 5

9             2.   Asbestos Claims against FBS and Relevant Insurance Coverage ................ 5

10            3.   The Cost-Sharing Agreement ...................................................... 6

11            4.   The Receivership and PWIC Settlement ...................................... 7

12            5.   The Settlement between FBS, the Initial Group of Settling Insurers, and the Receiver ...................................................... 7

13

14            6.   The NU Declaratory Relief Action against Settling Insurers and LMI ........ 8

15            7.   The Bankruptcy Proceeding and Settlement Approval Motions .................. 8

16            8.   The Inter-Insurer Claims ............................................................. 9

17                  a.   Appellants' equitable contribution claims ......................... 9

                b.   Appellants' breach of contract claims .............................. 11

18   V.  SUMMARY OF THE ARGUMENT ............................................................... 11

19   VI.  ARGUMENT ................................................................................................... 13

20        A.   The Bankruptcy Court Lacked Subject Matter Jurisdiction to Enjoin the Inter-Insurer Claims ...................................................... 13

21

22            1.   There is No Core Jurisdiction ..................................................... 13

23            2.   There is No Non-Core, Related-to Jurisdiction .......................... 14

24         B.   Even if the Bankruptcy Court had Jurisdiction to Enjoin the Inter-Insurer Contribution and Breach of Contract Claims, it Erred When it Relied Upon Section 105(a) to Do So ...................... 14

25

26            1.   Section 105(a)'s Purpose ........................................................... 14

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page i
Case Nos. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

2.    The Bankruptcy Court Erred By Enjoining the Inter-Insurer Claims under Section 105 ........................................................................ 15

3.    Section 105 Cannot Be Used to Evade the Requirements of a More Specific Bankruptcy Statute ................................................................ 16

4.    The Ninth Circuit Prohibits Bankruptcy Courts from Entering Non-Consensual Injunctions of Non-Debtor, Third-Party Claims under Section 105 ........................................................................................ 18

5.    The Enjoined Claims Cannot Be Enjoined on the Grounds that they Are Derivative of FBS's Rights under the Repurchased Policies ............... 20

C.    The Bankruptcy Court Erred in Permitting a Sale of the Repurchased Policies Free and Clear of Inter-Insurer Claims ...................................... 23

1.    What Is Property of the Bankrupt Estate? ......................................... 23

2.    How Is Property of a Bankrupt Debtor Sold? ................................... 24

3.    The Sale of the Repurchased Policies Free and Clear of the Inter-Insurer Claims Was Not Permissible .......................................... 25

a.    The Repurchased Policies Could Not Be Sold Free and Clear of the Inter-Insurer Claims Because they Are Not an Interest in the Property of FBS's .................................................. 25

b.    Even if the Inter-Insurer Claims Were Interests in FBS's Property, FBS Failed to Show that it is Entitled to Relief under Section 363(f) ................................................................. 26

D.    The Sale Was Not in Good Faith ......................................................... 28

VII.  CONCLUSION ..................................................................................................... 30

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page ii
Case Nos. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**TABLE OF AUTHORITIES**

**Cases**                                                                                           **Pages**

*American Hardwoods and Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*,
  67 F.3d 1394 (9th Cir. 1995) ................................................................ *passim*

*Axis Surplus Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 947 F. Supp. 2d 1129
  (W.D. Wash. 2013) ................................................................................11

*Battle Ground Plaza, LLC v. Estate of Jessen (In re Ray)*, No. WW-08-1104-
  KaJuPa, 2008 Bankr. LEXIS 4758 (B.A.P. 9th Cir. Dec. 31, 2008) ........................3

*Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124 (9th Cir. 2010) ........................13, 14

*Blausey v. United States Trustee*, 552 F.3d 1124 (9th Cir. 2009) ........................................5

*Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979) ..............................24

*CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378 (B.A.P. 9th Cir. 1997).............................24

*Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 839 P.2d
  314 (1992) ........................................................................................24

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d
  1011 (9th Cir. 2012) .............................................................................24

*Debilio v. Golden (In re Debilio)*, 2014 Bankr. LEXIS 3886 (B.A.P. 9th Cir. Sep.
  11, 2014).........................................................................................29

*Dunmore v. United States*, 358 F.3d 1107 (9th Cir. 2004)................................................14

*Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 189 L. Ed. 2d 83 (2014)..........................14

*Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455 (9th Cir. 1988).............................14

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279 (Cal.Ct.App.
  1998)........................................................................................10, 15, 26

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989).............................................28

*Ginger Root Office Assocs., LLC v. Farmer (In re Advanced Packaging & Prods.
  Co.)*, 426 B.R. 806 (C.D. Cal. 2010)..............................................................4, 24, 25

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page i
Case No.  3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

*Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415 (B.A.P. 9th Cir. 2003) ...............................................25

*Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633 (9th Cir. 2018) ........................18

*Hanf v. Summers (In re Summers)*, 332 F.3d 1240 (9th Cir. 2003) ................................................24

*Hey v. Silver Beach LLC (In re Silver Beach LLC)*, No. NV-09-1049, 2009 Bankr. LEXIS 4587 (B.A.P. 9th Cir. Nov. 3, 2009) ......................................................................25

*In re 240 North Brand Partners, Ltd.*, 200 B.R. 653 (9th Cir. 1996) ...............................................29

*In re A.H. Robins Co. (Menard-Sanford v. Mabey)*, 880 F.2d 694 (4th Cir. 1989) .........................20

*In re Adelphia Communications Corp.*, 364 B.R. 518 (Bankr. S.D.N.Y. 2007)...............................26

*In re Am. Hardwoods*, 885 F.2d 621 (9th Cir. 1989) .........................................................15, 19, 20

*In re Barbieri*, 199 F.3d 616 (2d Cir. 1999)......................................................................................18

*In re Burns & Roe Enters., Inc.*, No. 00-41610RG (Bankr. D.N.J. Feb. 17, 2005), ECF No. 1200...............................................................................................................27

*In re Castlerock Properties*, 781 F.2d 159 (9th Cir. 1986)............................................................11, 14

*In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD (Bankr. D. Alaska Feb. 17, 2010), ECF No. 689 ........................................................................................21

*In re Catholic Bishop of Spokane*, No. 04-08822 (Bankr. E.D. Wash. Apr. 24, 2007), ECF No. 1921 .......................................................................................21

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) .........................................................17, 18

*In re Fesco Plastics Corp.*, 996 F.2d 152 (7th Cir. 1993)................................................................18

*In re Forty-Eight Insulations, Inc.* 133 B.R. 973 (N.D. Ill. 1991) .................................................27

*In re Fraser's Boiler Serv., Inc.*, No. 18-41245-BDL, 2018 Bankr. LEXIS 2122 (Bankr. W.D. Wash. July 18, 2018) .....................................................................23

*In re Golden Plan of California, Inc.*, 829 F.2d 705 (9th Cir. 1986)...............................................15

*In re Kirkland*, 915 F.2d 1236 (9th Cir. 1990) .................................................................................4

*In re Pac. Gas & Elec. Co.*, 304 B.R. 395 (Bankr. N.D. Cal. 2004)...............................................17

*In re Pacific Far East Lines, Inc.*, 889 F.2d 242 (9th Cir.1989)......................................................4

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

*In re Roman Catholic Archbishop of Portland in Or.*, No. 04-37154-elp11 (Bankr. D. Or. Apr. 17, 2007), ECF No. 5097 ..................................................................................21

*In re Roman Catholic Church of Diocese of Tucson*, No. 4-04-bk-04721-JMM (Bankr. D. Ariz. Aug. 1, 2005), ECF. No. 791 ...........................................................21

*In re Sax*, 796 F.2d 994 (7th Cir. 1986) .........................................................................3

*In re Soc'y of Jesus, Or. Province*, No. 09-30938-elp11 (Bankr. D. Or. July 29, 2011), ECF No. 1336 ..................................................................................................21

*In Re Thorpe Insulation*, Order of Judge Bluebond ......................................................27

*In re Webb*, 954 F.2d 1102 (5th Cir. 1992) ....................................................................4

*In re Wilde Horse Enters., Inc.*, 136 B.R. 830 (Bankr. C.D. Cal. 1991)........................25

*In re Xenerga, Inc.*, 449 B.R. 594 (Bankr. M.D. Fla. 2011) ..........................................25

*In re Zale Corp.*, 62 F.3d 746 (5th Cir. 1995)................................................................19

*Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270 (8th Cir. 1983)..............................................................................................................................15

*King Cty. Travelers Indem. Co.*, 2018 U.S. Dist. LEXIS 64763 (W.D. Wash. Apr. 16, 2018)....................................................................................................................27

*Koste v. Chambers*, 78 Wn. App. 691, 899 P.2d 814 (1995) ........................................23

*MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir. 1988)..................... *passim*

*Madison Assocs. v. Baldante (In re Madison Assocs.)*, 183 B.R. 206 (Bankr. C.D. Cal. 1995)...................................................................................................................20, 21

*Moldo v. Clark (In re Clark)*, 266 B.R. 163 (9th Cir. BAP 2001) .................................25

*Morton v. Mancari*, 417 U.S. 535, 94 S. Ct. 2474 (1974)............................................16

*Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn. 2d 411, 191 P.3d 866 (2008) ................................................................................................................10, 15

*Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988) ...........................................................................................................18, 19

*Overton's, Inc. v. Interstate Fire & Cas. Ins. Co. (In re Sportstuff, Inc.)*, 430 B.R. 170 (B.A.P. 8th Cir. 2010) ........................................................................................27

DM1\9113136.2

APPELLANTS' OPENING BRIEF – Page iii
Case No.  3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

*Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wn. App. 753, 189 P.3d 777
(2008) ................................................................................................11, 23, 24, 26

*Pryor v. D'Alessio (In re D'Alessio)*, 8-12-08095-reg, 2014 Bankr. LEXIS 221
(Bankr. E.D.N.Y. Jan. 17, 2014) ....................................................................24

*Ratanasen v. Cal. Dep't of Health Servs.* 11 F.3d 1467 (9th Cir.1993).............................5

*Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721 (8th Cir. 2004)...................................3

*Schugg v. Lyon (In re Schugg)*, 2006 U.S. Dist. LEXIS 33259 (D. Ariz. May 22,
2006).................................................................................................................29

*Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal.3d 359, 612 P.2D 880, 165 Cal.Rptr.
799 (1980) ........................................................................................................10

*T. C. Inv'rs v. Joseph (In re M Capital Corp.)*, 290 B.R. 743 (B.A.P. 9th Cir. 2003)...............29, 30

*Thomas v. Namba (In Re Thomas)*, 287 B.R. 782 (B.A.P. 9th Cir. 2002) ......................................29

*Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters., Inc.)*, 90 F.3d 1472 (9th
Cir. 1996) ...........................................................................................................5

*Wei Suen v. Demas Wai Yan (In re Demas Wai Yan)*, 381 B.R. 747 (N.D. Cal.
2007)...................................................................................................................3

*Zuercher Tr. of 1999 v. Kravitz (In re Zuercher Tr. of 1999)*, 2014 Bankr. LEXIS
5061 (B.A.P. 9th Cir. Dec. 17, 2014)...............................................................30

**Statutes**

11 U.S.C. § 105 ................................................................................................. *passim*

11 U.S.C. § 363 ................................................................................................. *passim*

11 U.S.C. § 524 ................................................................................................. *passim*

11 U.S.C. § 541 ........................................................................................................24

28 U.S.C. § 157 ................................................................................................13, 14

28 U.S.C. § 158 ...........................................................................................................3

28 U.S.C. § 1334 .....................................................................................................13

Wash. Rev. Code § 7.60.260 ...................................................................................28

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page iv
Case No.  3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

# I.   <u>INTRODUCTION</u>

Appellants appeal the Bankruptcy Court's orders because the Court exceeded its jurisdiction and issued an injunction in violation of controlling Ninth Circuit precedent. The enjoined claims are equitable contribution and breach of contract claims against other insurers, which belong to Appellants; such claims have no effect on the debtor's bankruptcy estate. Moreover, the basis for the imposition of this extraordinary non-consensual injunction of claims between third parties relied upon by the Bankruptcy Court as a fallback was Section 105 of the Bankruptcy Code,[1] a position directly in opposition to binding Ninth Circuit precedent.   Finding no conceivable support for the position urged by the Debtor, the Bankruptcy Court defaulted to the statutory description of its general equitable powers in a manner the Ninth Circuit expressly forbids.

The debtor in this action, Fraser's Boiler Service, Inc. ("FBS"), filed under Chapter 11 of the Bankruptcy Code.  However, FBS admits that it has no intention of reorganizing.  It has not operated for over 20 years.  It expressly intends to use the money paid by the "Settling Insurers"[2] to pay claims that would not be cognizable in the tort system.  Its proposed chapter 11 plan leaves FBS's co-insurers, appellants Certain Underwriters at Lloyd's, London, Certain London Market Companies, and National Union Insurance Company (collectively, "Appellants"), the sole remaining insurers, to defend and indemnify all the meritorious asbestos bodily injury claims.

To achieve this goal, FBS entered into two settlement agreements with the Settling Insurers ("Settlements").  The Settlements provide that the Settling Insurers will repurchase from FBS the insurance policies they issued to FBS ("Repurchased Policies"), free and clear of Appellants' claims against the Settling Insurers for equitable contribution and breach of contract

---

[1] Unless otherwise specified, all section references herein are to sections of Title 11 of the United States Code.

[2] The insurer-parties to the first settlement agreement" are (1) Allianz Underwriters Insurance Company and Chicago Insurance Company (collectively, "Allianz"); (2) Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) and Pacific Employers Insurance Company (collectively, "Century"); (3) Hartford Accident and Indemnity Company ("Hartford"); (4) Zurich American Insurance Company (as successor-in-interest to Maine Bonding and Casualty Company) ("Zurich") (hereinafter the "Group Settlement."  The second settlement involved The Travelers' Insurance Company ("Travelers Settlement").

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

("Inter-Insurer Claims").   Equitable contribution allows an insurer that pays more than its equitable share of a loss, to recover from another insurer where both are independently obligated to indemnify or defend the same loss.   Such right belongs to the insurer seeking equitable contribution against another insurer, and is independent of the insured's rights.   The breach of contract claims arise from a contract among the Settling Insurers and Appellants, to which FBS is not a party.   The Inter-Insurer Claims have no effect on FBS, its policy limits, or any other property of FBS's bankruptcy estate and thus are outside of the Bankruptcy Court's jurisdiction.

Under the Settlements, the Settling Insurers will pay in excess of $13 million to buy back the Repurchased Policies.   FBS will use much of this money to pay its bankruptcy lawyers, including Gilbert LLP, which will receive 25%, or more than $3 million, from the Settling Insurers' payments. (Application to Retain and Employ Gilbert LLP as Special Insurance Counsel for Debtor, ECF, Dkt. 66).   Other estate and trust professionals, including DJO Services, a company owned by FBS's principle David Gordon, will be paid from the settlement proceeds for professional and management services not cognizable in the tort system, leaving bulk of the meritorious asbestos claims to be indemnified only by Appellants.   Appellants objected to the proposed sale of the policies free and clear of the Inter-Insurer Claims, but the Bankruptcy Court approved the sale and wrongly enjoined their claims ("Sale Orders").

In approving the Settlements, the Bankruptcy Court erred in multiple ways.   First, the Bankruptcy Court has no jurisdiction over the Inter-Insurer Claims, but it enjoined those claims nonetheless.   Second, the Bankruptcy Code permits injunctions protecting third-parties in asbestos-related cases only when Section 524(g) of the Bankruptcy Code has been complied with in full.   At a minimum, Section 524(g) requires that: (i) a debtor must reorganize, not liquidate; (ii) it must have an ongoing business that will be used to provide an evergreen fund to pay asbestos claims; (iii) a trust be established that will pay current and future claims equitably; (iv) a representative be appointed to protect the interests of unknown persons who may have claims in the future; and (v) every party protected by the injunction make a substantial contribution to the

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 2
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

trusts' corpus.  11 U.S.C. § 524(g).  However, in direct contravention of binding Ninth Circuit authority, the Bankruptcy Court issued an injunction under Section 105.  The Ninth Circuit has directed that Section 105 cannot be used to evade the express requirements of Section 524(g).  The Ninth Circuit prohibits the use of Section 105 to enjoin claims between two non-debtors.

In addition to the two errors discussed above, the Bankruptcy Court also improperly found that the Inter-Insurer Claims were an interest in the property of FBS's bankruptcy estate, even though, under applicable state law, the Inter-Insurer Claims have nothing to do with FBS and cannot affect its property.  Further, the Bankruptcy Court erred when it found that state law would have permitted a sale by the FBS of the Repurchased Policies free and clear of Inter-Insurer Claims.  Moreover, the Bankruptcy Court found that the sale, which diverts insurance proceeds from the asbestos claimants to FBS's lawyers, to be in good faith.  The record was devoid of any admissible evidence to support such a finding.

Given these egregious legal errors, Appellants respectfully request that the Court reverse the orders of the Bankruptcy Court.

## II.

## JURISDICTIONAL STATEMENT

The Court has jurisdiction to hear this appeal under 28 USC § 158(a), which grants district courts jurisdiction to consider appeals from "final judgments, orders, and decrees" of the bankruptcy court.  *Wei Suen v. Demas Wai Yan (In re Demas Wai Yan)*, 381 B.R. 747, 752 (N.D. Cal. 2007).  The subject sale orders state that they are final orders and judgments, and "[t]he law is fairly well-settled that 'an order confirming a sale of assets is considered a final judgment.'" *Battle Ground Plaza, LLC v. Estate of Jessen (In re Ray)*, No. WW-08-1104-KaJuPa, 2008 Bankr. LEXIS 4758, at *28 (B.A.P. 9th Cir. Dec. 31, 2008); *In re Sax*, 796 F.2d 994, 996 (7th Cir. 1986). Furthermore, "[a] bankruptcy sale under 11 U.S.C. § 363, free and clear of all liens, is a judgment that is good as against the world, not merely as against parties to the proceedings." *Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 732 (8th Cir. 2004).

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 3
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

1    Hence, the Court has jurisdiction over this appeal.

2                                    **III.**

3                **ISSUES PRESENTED AND STANDARD OF REVIEW**

4    This appeal presents the following issues:

5        1.   Did the Bankruptcy Court err when it held that it had subject-matter jurisdiction to

6    enjoin the Inter-Insurer Claims?

7        2.   Did the Bankruptcy Court err by enjoining the Inter-Insurer Claims under Section 105,

8    contrary to the requirements of Section 524(g)?

9        3.   Did the Bankruptcy Court err when it held the Inter-Insurer Claims are "derivative" and

10   "inseparable from the debtor's own insurance policies?"

11       4.   Did the Bankruptcy Court err in holding that the Repurchased Policies could be sold

12   free and clear of the Inter-Insurer Claims?

13       5.   Did the Bankruptcy Court err when it approved the sale of the policies under Section

14   363(f), free and clear of the Inter-Insurer Claims?

15       6.   Did the Bankruptcy Court err when it held that applicable state law would permit the

16   sale free and clear of the Inter-Insurer Claims?

17       7.   Did the Bankruptcy Court err in finding the sale to be in good faith?

18       8.   Did the Bankruptcy err in finding the sale had a legitimate business justification?

19       When reviewing a decision of the bankruptcy court, a District Court functions as an

20   appellate court and applies the standards of review generally applied in federal courts of appeal.

21   *Ginger Root Office Assocs., LLC v. Farmer (In re Advanced Packaging & Prods. Co.)*, 426 B.R.

22   806, 816 (C.D. Cal. 2010) (citing *In re Webb*, 954 F.2d 1102, 1103-04 (5th Cir. 1992)).

23       Questions of law are reviewed *de novo*. *In re Pacific Far East Lines, Inc.*, 889 F.2d 242,

24   245 (9th Cir.1989).   The Court makes an independent review of the Bankruptcy Court's

25   interpretation of state law.  *In re Kirkland*, 915 F.2d 1236, 1238 (9th Cir. 1990).  To the extent that

26   questions of fact cannot be separated from questions of law, the Court reviews them as mixed

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 4
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

questions of law and fact applying a *de novo* standard.  *Ratanasen v. Cal. Dep't of Health Servs.*

11 F.3d 1467, 1469 (9th Cir.1993).  A bankruptcy court's decision as to whether it has subject

matter jurisdiction is reviewed *de novo*.  *Vylene Enters., Inc. v. Naugles, Inc. (In re Vylene Enters.,*

*Inc.*), 90 F.3d 1472, 1475 (9th Cir. 1996) ("Because the issue here is whether the bankruptcy court

had jurisdiction . . . we conduct a *de novo* review").  Issues 1 – 6 above are legal issues and subject

to the Court's *de novo* review.  Findings of fact are reviewed for clear error.  *Blausey v. United*

*States Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009).  The Bankruptcy Court's good faith finding is

a factual determination.  Thus, issues 7 and 8 above, was the sale in good faith and was it

supported by a legitimate business justification, are subject to review for clear error.

## IV.   STATEMENT OF THE CASE

### A.   Pertinent Factual and Procedural Background

#### 1.   Fraser's Boiler Service, Inc.

FBS is a Washington corporation based in San Diego, California.  It operated as a general

contractor in the assembly, installation, and repair of marine and landslide boilers, but stopped

operating several years ago and became insolvent in 2014. (Movants' Opposition to Motion to

Approve Group Settlement, ¶ 7 ("Opp to Group Settlement," App. Vol. III, Dkt. No. 134, p. 938).

FBS has not had employees, customers, or operating assets for several years. *Id.*

#### 2.   Asbestos Claims against FBS and Relevant Insurance Coverage

Beginning in 1994, asbestos suits filed in Washington, Oregon, and California named FBS

as a defendant. (Debtor's Motion to Approve Group Settlement, ¶¶ 6, 8 ("Motion to Approve

Group Settlement," App. Vol. I, Dkt. No. 61, pgs. 270-271.) Since approximately 1994, FBS's

insurers, including Appellants, have defended and paid the asbestos claims filed against it through

informal and formal cost sharing agreements. (Opp. to Group Settlement, ¶ 8, App. Vol. III, Dkt.

No. 134, pgs. 938-939).  FBS was issued commercial general liability insurance policies between

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 5
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

1964 and 2000, which allegedly provided coverage for the asbestos claims for the asbestos claims. (Motion to Approve Group Settlement, ¶ 7, App. Vol. I, Dkt. No, 61, p. 271.)[3]

In December 2011 or early 2012, PWIC claimed it had exhausted its asbestos claim coverage. (Opp. to Group Settlement, ¶ 14, App. Vol. III, Dkt. No. 134, pgs. 940-941.)   In May 2012, PWIC filed a declaratory judgment action in Washington court, contending it had fully exhausted its policies' limits and had no remaining coverage obligation. (Motion to Approve Group Settlement, ¶ 10, App. Vol. III, Dkt No. 61, pgs. 271-272.)

### 3.    The Cost-Sharing Agreement

Despite PWIC's assertions of exhaustion, on August 19, 2015, FBS's insurers, including PWIC, entered into a Cost-Sharing Agreement ("CSA"); the CSA was amended on August 18, 2017.  Parties to the 2017 iteration of the CSA included the Settling Insurers and the Appellants, but not PWIC.[4]  FBS was not a party to either the original or the amended CSA (Appellants filed a true and correct copy of the CSA with the Court under seal, at ECF No. 24).  Dkt. #23 (Order Granting Motion to Accept Sealed Bankruptcy Documents Pursuant to FRBP 8009(f).)  The Bankruptcy Court considered the CSA before writing the Memorandum Opinion. (Order Approving Group Settlement, p. 3:9-10).  The CSA sets forth each of FBS's insurers' contractual obligations to each other in their defense and indemnification of FBS against bodily injury claims, and other confidential information. FBS's insurers complied with the terms of the CSA through the filing of the bankruptcy. (Opp. to Group Settlement, ¶ 10, App. Vol. III, Dkt. No. 134, p. 939.)

---

[3] FBS's relevant insurance carriers are:  National Union Insurance Company ("NU"); Century Indemnity Company (as successor to CCI Insurance Company, as successor to Insurance Company of North America) ("Century"); Continental Casualty Company/CNA ("Continental"); Chicago Insurance Company ("Chicago"); Providence Washington Insurance Company ("PWIC") (not a party to the settlements at issue here); Zurich American Insurance Company ("Zurich"); Hartford Accident and Indemnity Company ("Hartford"); Allianz Underwriters Insurance Company ("Allianz"); London (Lloyd's Underwriters and London Companies) ("London Market Insurers" or "LMI"); and The Travelers Indemnity Company ("Travelers").  (Opp. to Group Settlement, n.1.)
[4] Signatories to the 2015 CSA are Allianz, LMI, Century, Zurich, Hartford, PWIC, and Chicago. Signatories to the 2017 CSA are Hartford, Century, LMI, Zurich, Travelers, NU, Chicago and Allianz.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

### 4. The Receivership and PWIC Settlement

FBS initiated a Washington state court receivership on January 22, 2015.  (*Id*. at ¶ 3.) After FBS filed for receivership, David Gordon purchased its stock for $10,000 ($1,000 down) - with no intention to revive it. (*Id*.)  At that time, FBS was insolvent with no plans to revive operations.  FBS still does not plan to revive operations. (*Id*., ¶ 7)

Around the time that the receivership began, PWIC and FBS entered into a putative settlement agreement. (*Id.*, ¶ 14; Motion to Approve Group Settlement, ¶ 10.) After the receivership proceeding commenced, the court-appointed receiver, Resource Transition Consultants, LLC ("Receiver"), objected to the settlement reached between PWIC and FBS, contending the settlement amount was far too little.  (*Id*.) Ultimately, the Receiver and PWIC resolved their differences and entered into a settlement in November 2016. (*Id*.) On January 31, 2018, the receivership court granted FBS's and PWIC's joint motion for an order approving settlement and for contribution bar.  The PWIC settlement provides that the money goes to FBS's other insurers to pay claims pursuant to the CSA. (*Id*. at ¶ 15.)  All of FBS' insurers have appealed that order, and the contribution bar, to the state appellate court.

### 5. The Settlement between FBS, the Initial Group of Settling Insurers, and the Receiver

Prior to the bankruptcy proceeding, the Settling Insurers and the Appellants entered into settlement discussions and negotiations with the Receiver.  (Motion to Approve Group Settlement, ¶ 13.)  The Receiver and Settling Insurers then excluded Appellants from the Settlement. (Motion to Approve Group Settlement, ¶ 13.)  On June 26, 2018, after FBS filed under chapter 11, FBS entered into a Settlement with Travelers.[5] (Declaration of Craig Litherland ("Litherland Decl.") in support of Motion to Approve Group Settlement, Ex. C.); (Litherland Decl. in support of Motion to Approve Travelers Settlement").   The Settlements required FBS to seek approval of the Settlements from the Bankruptcy Court, and an injunction "barring any person or entity from

---

[5]     These insurers are Allianz, Century, Hartford, and Zurich.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

asserting any claim against any of [the insurers] under or with respect to the Policies."  Group Settlement §§ 1.24, 6.4, Travelers Settlement §§ 1.11, 6.1.  The Settlements require the Settling Insurers to pay all or part of their respective shares of the Settlement within 30 days of written notice that an injunction order has become final and no longer subject to appeal.  *Id*., § 2.1.  Thus, no Settling Insurer will make a payment until this, or a further appeal, is resolved. *Id*.

### 6.    The NU Declaratory Relief Action against Settling Insurers and LMI

On March 9, 2018, NU filed an action for declaratory relief and breach of contract against the Settling Insurers and LMI, styled *National Union v. Allianz Underwriters Insurance Company, et al*., case number BC697553, in Los Angeles Superior Court ("NU Declaratory Relief Action"). FBS is not named in the suit.  NU seeks declaratory relief regarding equitable contribution, indemnity, and rights under the CSA, and it alleges breach of contract claims for the Settling Insurers' anticipatory breach of the CSA, arising from their proposed withdrawal from FBS's defense and indemnification, due to their Settlements with the Receiver.  *Id*.  That action was removed to the U.S. Bankruptcy Court for the Central District of California (Case No. 2:18-ap-01221-ER), where it is currently stayed by agreement of the parties.  Dkt. # 24.

### 7.    The Bankruptcy Proceeding and Settlement Approval Motions

On April 9, 2018, FBS filed for bankruptcy under Chapter 11, staying all litigation against it, including the underlying asbestos claims. (Voluntary Petition, Vol. I, Dkt. No. 1, pgs. 1-4.) FBS filed its Motion for an Order Approving (I) A Settlement Agreement with Certain Insurers, (II) the Sale of Certain Policies to Certain Insurers, and (III) Certain Other Relief to be Provided to Certain Insurers ("Motion to Approve Group Settlement"), on April 27, 2018. (Motion to Approve Group Settlement, App. Vol. III, Dkt No. 61, pgs. 269-306.) On June 28, 2018, FBS filed a Motion to Approve the Settlement with Travelers ("Travelers Settlement Motion," and with the Motion to Approve Group Settlement, "Motions"). (Travelers Settlement Motion, App. Vol. V, Dkt. No. 226, pgs. 1666-1691.)  The Motions sought approval of the Bankruptcy Court pursuant to 11 U.S.C. §§ 363(b) and (f) for FBS to sell the Repurchased Policies to the Settling Insurers, free

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 8
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

and clear of all claims of any person, and the entry of an injunction against any such claims, including the Inter-Insurer Claims.  Appellants filed a joint objection to the Motions ("Objection") on June 1, 2018. (U.D., ECF Nos. 134, 226.)

On July 18, 2018, the Bankruptcy Court entered its Memorandum Decision granting the Motions.  (Memorandum Decision, App. Vol. V, Dkt. No. 284, pgs. 2064-2079).  On July 25, 2018, the Bankruptcy Court entered its Orders approving the Motions. (Orders Approving Motion, App. Vol. VI, Dkt. No. 300, pgs. 2029-2337 and Dkt. No. 301, pgs 2338-2345.)  Appellants timely filed these appeals on August 7, 2018.  (Notices of Appeal, App. Vol. VI, Dkt. No. 323, pg. 2441-2445 and Dkt. No. 324, pgs. 2446-2450.)

### 8.    The Inter-Insurer Claims

#### a.    Appellants' equitable contribution claims

Although FBS and Appellants have disagreed over whether California or Washington law applies to various issues, choice of law is not an issue here.  Under the law of both states, Appellants have equitable contribution claims against the Settling Insurers.  These claims, as the name suggests, arise in equity (not through contract- *e.g.*, the insurance policies or the CSA), and are separate and distinct from FBS's interest in the Repurchased Policies.  Moreover, under the law of both California and Washington, such claims have no effect on an insured's rights or available limits under its insurance policies.

Under California law, an insurer that has settled or contributed to a claim against its insured may seek equitable contribution from nonpaying or underpaying coinsurers.  *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1293 (Cal.Ct.App. 1998).  Unlike subrogation, which grants an insurer a cause of action against a coinsurer *based on the insured's rights under its policies*, equitable contribution gives independent standing to each insurer to assert a cause of action against a coinsurer based on (i) the coinsurer's refusal to defend or indemnify the common insured, or, (ii) even if it does defend or indemnity, the coinsurer's failure to pay its equitable share.  *Id*. at 1293-94.  Equitable contribution is "predicated on the common

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

sense principle that where multiple insurers…share equal contractual liability for the primary indemnification of a loss or the discharge of an of an obligation, the selection of which indemnitor is to bear the loss should not be left to the often arbitrary choice of the loss claimant, and no indemnitor should have any incentive to avoid paying a just claim in the hope the claimant will obtain full payment from another coindemnitor." *Id*. at 1295.  Equitable contribution thus has nothing to do with the rights the insured may have against the coinsurer.  *Id*. at 1294 ("**The right of equitable contribution belongs to each insurer individually.  It is not based on any right of subrogation to the rights of the insured, and is not equivalent to "'standing in the shoes'" of the insured**." (Emphasis added))*. See also Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal.3d 359, 369, 612 P.2D 880, 165 Cal.Rptr. 799 (1980) ("The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other….  Their respective obligations flow from equitable principles ….")

The Supreme Court of Washington has stated that equitable contribution rights are independent of those of the insured.  *Mutual of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn. 2d 411, 419, 191 P.3d 866 (2008).  It held: "[e]quitable contribution refers to the right of one party to recover from another party for a common liability.  In the context of insurance law, contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss.  *Importantly, contribution is a right of the insurer and is independent of the rights of the insured.  The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other.  Their respective obligations flow from equitable principles* ...." *Id.* at 419-20 (emphasis added); *Axis Surplus Ins. Co. v. St. Paul Fire & Marine Ins. Co*., 947 F. Supp. 2d 1129, 1137 (W.D. Wash. 2013) (applying Washington law) ("Washington law is clear that … contribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss"): *Polygon Nw. Co. v. Am. Nat'l Fire Ins. Co*., 143 Wn. App. 753, 189 P.3d 777 (2008) ("Assurance's claims were claims for equitable contribution against

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 10
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

jointly liable coinsurers – claims that arise from the rights of the overpaying insurer, *not* from the rights of the insured.")

The Appellants' contribution claims belong to them alone, and can have no possible effect on FBS's rights.

### b.    Appellants' breach of contract claims

The CSA contractually obligates each participating insurer to share in the defense and/or the indemnity of FBS.  FBS's insurers amended the CSA in 2017; it automatically renews in 2019. By settling, the Settling Insurers will no longer accept the equitable allocation of expenditures for defense and indemnity of asbestos-related claims to which they are still legally obligated under the CSA.  Thus, by settling, the Settling Insurers breached their contractual obligations under the CSA to the Appellants, giving rise to anticipatory breach and breach of contract claims under state law. *See*, *e.g.*, *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986).  These claims are not against FBS, or the Repurchased Policies, and have no effect on FBS's property.  FBS is not a party to the CSA and has no interest in the CSA whatsoever.  Nonetheless, the Bankruptcy Court enjoined the Inter-Insurer Claims under the mistaken belief that they asserted a right in FBS's interest in the Repurchased Policies.  None of the Inter-Insurer Claims has any connection to FBS's bankruptcy estate.  As discussed below, the bankruptcy court erred when it approved the sale of Settling Insurers' policies free and clear of those Inter-Insurer Claims.

### V.    <u>SUMMARY OF THE ARGUMENT</u>

The Inter-Insurer Claims belong solely to the Appellants and are against the Settling Insurers, not FBS or its property.  They could not possibly have any effect on FBS, or its bankruptcy estate, or the funds available in the liquidating trust to pay asbestos-related claims. They exist separate and apart from FBS's insurance.  NU's action against the Settling Insurers could only result in a declaratory judgment allocating the risk between the insurers, and an award of compensatory damages, to be paid from the Settling Insurers general corporate assets.  Thus, the Inter-Insurer Claims are outside the Bankruptcy Court's jurisdiction and the Bankruptcy Court

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 11
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

exceeded its jurisdiction by entering Orders with respect to the Inter-Insurer Claims.

Further, the injunction of the Inter-Insurer Claims is improper because Section 105 cannot be substituted for Section 524(g) to enjoin claims in a case that predominantly has asbestos-related liabilities.  The Ninth Circuit expressly forbids bankruptcy courts from entering injunctions under Section 105(a) to enjoin claims between non-debtors.  *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92-93 (2d Cir. 1988) ("*Johns-Manville*"), which the Bankruptcy Court relied upon, has not been followed by the Ninth Circuit.  Even if it had been, it would not apply to the Inter-Insurer Claims, because such claims have no effect on FBS or its bankruptcy estate.

The Bankruptcy Court also erred in approving the sale of the Repurchased Policies free and clear of the Inter-Insurer Claims.  Its approval relied on Section 363(f), which applies only to interests in the property of a debtor.  The Inter-Insurer Claims are not such property.  Moreover, even if Section 363(f) applied, the Bankruptcy Court erred holding that a sale free and clear was appropriate under the circumstances of this case

The Bankruptcy Court also improperly found that the sale of the Repurchased Policies was a sale in good faith. The Bankruptcy Court did not hear any evidence relating to good faith.  The Bankruptcy Court had no evidence before it of the value of the Repurchased Policies, or how that value compared to the payments FBS would receive under the Settlements.  FBS could not have presented such evidence without showing the value of the outstanding claims against it and how those claims compared to the outstanding policy limits and the amounts to be received under the Settlements.  However, FBS presented no such evidence.   Any close review of the sale shows that the sale was not made in good faith.  At its core, the settlement does nothing more than divert insurance proceeds from the asbestos claimants to FBS's bankruptcy lawyers and professionals.

Consequently, Appellants respectfully request that the Court reverse the orders approving the Group Settlement and Travelers' Settlement.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

# VI.   ARGUMENT

## A.   The Bankruptcy Court Lacked Subject Matter Jurisdiction to Enjoin the Inter-Insurer Claims

The Bankruptcy Court's subject matter jurisdiction is conferred by two statutes, 28 U.S.C. §§ 157(a) and 1334. *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1130 (9th Cir. 2010) (citing 28 U.S.C. § 1334(b)).   28 U.S.C. § 1334 provides that bankruptcy courts have "jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id*.  If jurisdiction exists, then 28 U.S.C. § 157 determines what kind of jurisdiction a bankruptcy court will have over a matter, *i.e.*, "core," or "non-core, related-to".   Here, the Bankruptcy Court had no jurisdiction at all over the Inter-Insurer Claims.

### 1.   There is No Core Jurisdiction

The Inter-Insurer Claims were not within the Bankruptcy Court's core jurisdiction.  "[A] core proceeding is one that "invokes a substantive right provided by title 11 or . . . a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *Ray*, 624 F.3d at 1131 (citations omitted).  While the list of core proceedings provided in 28 U.S.C. § 157(b)(2) is not exhaustive, those provisions must be read narrowly, to avoid "constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent." *Dunmore v. United States*, 358 F.3d 1107, 1115 (9th Cir. 2004).  A Bankruptcy Court can enter final orders only on matters within its core jurisdiction. *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165, 2171-72, 189 L. Ed. 2d 83 (2014).

The Inter-Insurer Claims are state law equitable contribution and contractual claims that do not invoke substantive rights under Title 11; such claims could arise outside of a bankruptcy case, and, in fact, regularly do so arise.

The Bankruptcy Court's Orders violate the *Dunmore* prohibition to avoid "constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent."

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

### 2.      There is No Non-Core, Related-to Jurisdiction

A Bankruptcy Court has "non-core" or "related-to" with respect to any proceeding where "the outcome of the proceeding could conceivably … alter the debtor's rights, liabilities, options, or freedom of action . . . and … impacts upon the handling and administration of the … estate". *Fietz v. Great W. Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir. 1988).  Actions that do not depend on bankruptcy laws for their existence and that could proceed in another court are non-core.  *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986)).

The Inter-Insurer Claims are not within the Bankruptcy Court's non-core jurisdiction, because the resolution of the Inter-Insurer Claims, which affect only the rights of insurers *inter se,* has no effect on FBS's rights, liabilities, options or freedom of action, and thus does not affect the handling or the administration of the estate.  *See, e.g.*, *Fireman's Fund Ins. Co.*, 65 Cal.App.4th at 1293; *Mutual of Enumclaw Ins. Co.*, 164 Wash.2d at 419.  Because the Inter-Insurer Claims have no connection to FBS or its estate, such claims are not within either the Bankruptcy Court's core or non-core jurisdiction.

Thus, the Bankruptcy Court's orders enjoining the Inter-Insurer Claims, were outside of its jurisdiction, and should be reversed.  If this Court finds there was no jurisdiction over the Inter-Insurer Claims, then the Appellants will have established grounds to reverse and vacate the underlying orders and this Court need not reach the balance of the arguments in this appeal.

### B.      Even if the Bankruptcy Court had Jurisdiction to Enjoin the Inter-Insurer Contribution and Breach of Contract Claims, it Erred When it Relied Upon Section 105(a) to Do So

### 1.      Section 105(a)'s Purpose

Even if the Bankruptcy Court had jurisdiction over the Inter-Insurer Claims, it improperly enjoined such claims under Section 105(a).  Section 105(a) states:  "(a) The court may issue any order… that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105.

"Section 105 empowers the court to enjoin preliminarily a creditor from continuing an action or enforcing a state court judgment against a nondebtor prior to confirmation of a plan."  *In*

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

*re Am. Hardwoods*, 885 F.2d 621, 624 (9th Cir. 1989) (citations omitted).  "Furthermore, section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate."  *Id.* at 625.

Appellants are not creditors of FBS.  Moreover, Section 105 is not a roving commission to do equity.  "While endowing the court with general equitable powers, Section 105 does not authorize relief inconsistent with more specific law."  *Id.* (citing *In re Golden Plan of California, Inc.*, 829 F.2d 705, 713 (9th Cir. 1986)) ("a bankruptcy court's equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act."); *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir. 1983) ("same") (citations omitted), *cert. denied*, 465 U.S. 1012, 79 L. Ed. 2d 245, 104 S. Ct. 1015 (1984).  This is consistent with the well-recognized maxim of statutory interpretation that a more specific statute will not be controlled or nullified by a general one.  *See Morton v. Mancari*, 417 U.S. 535, 551, 94 S. Ct. 2474, 2483 (1974) (citations omitted).

### 2. The Bankruptcy Court Erred By Enjoining the Inter-Insurer Claims under Section 105

The Bankruptcy Court erred by relying on Section 105 to enjoin the Inter-Insurer Claims. The Bankruptcy Court Orders state:

> Pursuant to Sections 363 and 105(a) of the Bankruptcy Code, all rights, titles, and interests in Policies issued by any Insurers will be deemed to have been sold, transferred, and conveyed to those Insurers, free and clear of all claims, liens, encumbrances, and interests of any kind or nature whatsoever.  In order to effectuate the sale, transfer, and conveyance of the Policies, all persons and entities shall be, and hereby are, permanently enjoined, barred, and estopped from seeking any relief from or taking any action or asserting any claim against the Insurers based upon, arising out of, in connection with, attributable to, or relating to the Policies, for the purpose of directly or indirectly collecting, recovering, receiving, or asserting any claims, liens, encumbrances, or interests of any kind or nature based upon, arising out of, under, and/or relating to the Policies, including, but not limited to, any claims, liens, encumbrances, or interests such person or entity had, has, or may have against or in FBS or its estate or successors.

Order on Motion to Approve Group Settlement, ¶ 8; *see also* Order on Travelers Settlement Motion, ¶ 8.

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 15
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

To justify this injunction, the Bankruptcy Court incorrectly distinguished *American Hardwoods* and *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394, 1401-02 (9th Cir. 1995), as follows:

> However, the supplemental injunction proposed in this case is distinguishable from those precedents.  The crux of the difference is that, unlike releases of all claims against a third party, the supplemental injunction is narrowly tailored to only apply to derivative claims.  A third party asserts a claim that is derivative of an insurance policy when the third party "seeks to collect out of the proceeds of [the debtor's] insurance policies on the basis of [the debtor's] conduct." *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92-93 (2d Cir. 1988).  Derivative claims are inseparable from the debtor's own insurance policies.  *Id*.  The contribution and indemnity claims subject to the supplemental injunction are claims derived from the insurance policies being sold back to the Certain Insurers free and clear pursuant to the Settlement Agreement.  Because it only impacts derivative claims, the supplemental injunction is not the equivalent of a discharge of a third party.  *See In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 418 n.26 (Bankr. N.D. Cal. 2004).

Memorandum Decision at 13.

> There are notable differences between this case and *Lowenschuss*.  Unlike in *Lowenschuss*, the dispute at hand involves mass torts and multiple parties and interests.  The supplemental injunction does not provide for retention of the asset by the debtor or a purchasing third party, but rather the payment of the cash value of those assets into a liquidating trust that is essential to Fraser's plan of reorganization.  The *Lowenschuss* Court did not find that the release was essential to the reorganization.  And unlike the settlement here, which impacts all of the claimants who can seek recoveries based on the insurance policies being sold, the dispute in *Lowenschuss* was very limited and did not involve a derivative claim.

*Id*. at 13-14.

Central to the Bankruptcy Court's rationale is a deeply flawed understanding of "derivative claims", as discussed in detail in section 5 below.  Based on these implausible grounds for distinction, the Bankruptcy Court erred by entering an injunction pursuant to Section 105 discharging the Settling Insurers from their liabilities for the Inter-Insurer Claims.

### 3.  Section 105 Cannot Be Used to Evade the Requirements of a More Specific Bankruptcy Statute

No court in the Ninth Circuit has used Section 105 as the sole source of authority to enjoin claims over the objection of the enjoined parties in a case addressing asbestos liabilities.  The reason is obvious.  Congress enacted Section 524(g) specifically to provide such relief.

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 16
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

Bankruptcy Courts cannot use Section 105 to evade the requirements of Section 524(g).  As the Third Circuit stated:

> we do not believe that § 105(a) can be employed to extend a channeling injunction to non-debtors in an asbestos case where the requirements of § 524(g) are not otherwise met.  Because the injunctive action on independent non-derivative claims against non-debtor third parties in this case would violate § 524(g)(4)(A), would improperly extend bankruptcy relief to non-debtors.

*In re Combustion Eng'g, Inc.*, 391 F.3d 190, 233-34 (3d Cir. 2004).  Controlling authority dictates that the Court cannot enjoin claims against between non-debtors.  The only recognized exception to that requirement is Section 524(g).  However, FBS does not seek relief under Section 524(g), nor could it meet its strict requirements.[6]

Because FBS cannot meet Section 524(g)'s requirements, the Bankruptcy Court instead improperly enjoined the Inter-Insurer Claims pursuant to Section 105.  "Importantly for this case, § 105(a) does not 'give the court the power to create substantive rights that would otherwise be unavailable under the Code.'").  *Combustion Eng'g*, 391 F.3d at 236 (citations omitted); *see also In re Barbieri*, 199 F.3d 616, 620-21 (2d Cir. 1999) (warning the "equitable powers emanating from § 105(a) . . . are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules.").

As controlling authority makes clear, the general grant of equitable power contained in Section 105(a) cannot trump specific provisions of the Bankruptcy Code.  Section 105 can only be relied upon in support of other Bankruptcy Code provisions.  *Goudelock v. Sixty-01 Ass'n of Apartment Owners*, 895 F.3d 633 (9th Cir. 2018) (citing *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988) ("[W]hatever equitable powers remain in

---

[6] "Section 524(g) provides a special form of supplemental injunctive relief for an insolvent debtor facing the unique problems and complexities associated with asbestos liability. Channeling asbestos-related claims to a personal injury trust relieves the debtor of the uncertainty of future asbestos liabilities. This helps achieve the purpose of Chapter 11 by facilitating the reorganization and rehabilitation of the debtor as an economically viable entity. At the same time, the rehabilitation process served by the channeling injunction supports the equitable resolution of asbestos-related claims. In theory, a debtor emerging from a Chapter 11 reorganization as a going-concern cleansed of asbestos liability will provide the asbestos personal injury trust with an "evergreen" source of funding to pay future claims. This unique funding mechanism makes it possible for future asbestos claimants to obtain substantially similar recoveries as current claimants in a manner consistent with due process." *Combustion Eng'g*, 391 F.3d at 234.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."); *see also Combustion Eng'g*, 391 F.3d at 236.  "When the Bankruptcy Code provides a specified means for a debtor to obtain a specific form of equitable relief, those standards and procedures must be observed."  *Combustion Eng'g, id.* (citing *In re Fesco Plastics Corp.*, 996 F.2d 152, 154-55 (7th Cir. 1993)) ("When a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code."); *Lowenschuss*, 67 F.3d at 1402 ("Section 105 does not authorize relief inconsistent with more specific law"); *In re Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) ("A § 105 injunction cannot alter another provision of the Code.").

Here, the Bankruptcy Court relied upon Section 105(a) to achieve a result inconsistent with Section 524(g)(4)(A).  Although the Bankruptcy Court has broad authority to construct remedies necessary to facilitate the reorganization of a debtor, this power is cabined by the Code.  *Ahlers*, 485 U.S. at 206.  There is no authority to enjoin third-party actions against non-debtors unless such injunction complies with Section 524(g).  The injunction of the Inter-Insurer Claims is impermissible.

> **4.    The Ninth Circuit Prohibits Bankruptcy Courts from Entering Non-Consensual Injunctions of Non-Debtor, Third-Party Claims under Section 105**

*American Hardwoods* and *Lowenschuss* are controlling precedent from the Ninth Circuit expressly prohibiting the type of injunction issued by the Bankruptcy Court.

In *American Hardwoods*, the Bankruptcy Court found that it lacked both the jurisdiction and the power to enjoin claims by Deutsche Credit Corporation ("Deutsche") against the guarantors of a debtor.  *Id*. at 622.  Deutsche obtained an order in Oregon state court permitting it to seize American Hardwoods' machinery.  *Id*.  American Hardwoods filed for bankruptcy, and Deutsche moved for summary judgment in state court against the guarantors.  *Id*.  American Hardwoods sued Deutsche in the bankruptcy court to enjoin Deutsche from continuing its

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

1    enforcement action.  *Id.*  The Bankruptcy Court determined that it lacked both the jurisdiction and

2    the power to enjoin claims between non-debtors, and the District Court affirmed.  *Id.* at 623.

3            On appeal, the Ninth Circuit held an injunction protecting non-debtors would violate the

4    express terms of Section 524(e).[7]  *Am. Hardwoods*, 885 F.2d at 626 (citations omitted) ("The

5    bankruptcy court can affect only the relationships of debtors and creditor.  It has no power to

6    affect the obligations of guarantors").    American Hardwoods argued that the injunction it

7    requested was distinguishable from a discharge.  *Id.*  However, the Ninth Circuit rejected this

8    argument, stating:

9            11 U.S.C.  §  524(a)(2), however, describes the effect of a discharge "as an
             injunction against the commencement or continuation of an action, the employment
10           of process, or an act, to collect, recover or offset any such debt as a personal
             liability of the debtor, whether or not discharge of such debt is waived."  We find
11           American's semantic distinction between a permanent injunction and a discharge
             unpersuasive.

12

13   *Am. Hardwoods*, 885 F.2d at 626 (declining to follow *In re A.H. Robins Co. (Menard-Sanford v.*

14   *Mabey)*, 880 F.2d 694 (4th Cir. 1989)).

15           In *Lowenschuss,* the Ninth Circuit affirmed *American Hardwoods*, stating:

16           In *American Hardwoods*, 885 F.2d at 625-26, we explicitly rejected the argument -
             advanced by Lowenschuss today - that the general equitable powers bestowed upon
17           the bankruptcy court by 11 U.S.C. § 105(a) permit the bankruptcy court to
             discharge the liabilities of non-debtors.  Noting that "section 105 does not authorize
18           relief inconsistent with more specific law," we concluded "the specific provisions
             of section 524 displace the court's equitable powers under section 105 to order the
19           permanent relief [against a non-debtor] sought by [the debtor]."  *Id.* at 625-26.

20   *Lowenschuss*, 67 F.3d at 1402 (9th Cir. 1995).  The injunctive relief overturned by the Ninth

21   Circuit in *Lowenschuss* is the same relief awarded by the Bankruptcy Court, *i.e.*, a permanent

22   injunction protecting non-debtors, the Settling Insurers from the Inter-Insurer Claims.  It is invalid.

23           [T]he Ninth Circuit in the *American Hardwoods* case has specifically held that the
             use of Section 105 to permanently enjoin actions by non-debtors against other non-
24           debtors violates the provisions of Section 524 (e).  Thus, although *American*

25   _____

     [7]    That section states:  "(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the
26   debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  Section
     524(a)(3) addresses the effect of a discharge on community property claims and is inapplicable herein.

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 19
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

1

2

> *Hardwoods* did not involve a large partnership case, its ruling is nevertheless broad enough to apply to any case involving permanent § 105 injunctions against non-debtors.

3   *Madison Assocs. v. Baldante (In re Madison Assocs.)*, 183 B.R. 206, 213 (Bankr. C.D. Cal. 1995).

4   *American Hardwoods* and *Lowenschuss* remain good law.  Thus, even if another Circuit might

5   have permitted an injunction of the Inter-Insurer Claims, the Ninth Circuit prohibits it.

6          The Bankruptcy Court cited a number of non-asbestos cases in support of its decision to

7   issue an injunction under Section 105.[8]  The Bankruptcy Court ignored a critical distinction.  All

8   of the cases cited concerned sexual abuse of children.  They had nothing to do with asbestos and

9   hence Section 524(g) did not apply.  These cases are irrelevant and unpersuasive here.

10              **5.      The Enjoined Claims Cannot Be Enjoined on the Grounds that they**
                         **Are Derivative of FBS's Rights under the Repurchased Policies**

11

12         The Bankruptcy Court ignored the controlling authority discussed above, however, and

13   relied upon the Second Circuit's ruling in *Johns-Manville*.  The Bankruptcy Court held that

14   because the Inter-Insurer Claims were "derivative", and thus "inseparable from the debtor's own

15   insurance policies," the Inter-Insurer Claims could be enjoined.  Memorandum Decision at 13.

16         However, the Bankruptcy Court erred.  The Ninth Circuit does not follow *Johns-Manville*

17   or its "derivative claim" theory, because of the express prohibition of such an injunction by

18   *American Hardwoods* and *Lowenschuss*.  *See, e.g., Madison Assocs.*, 183 B.R. at 213 (recognizing

19   the Ninth Circuit does not follow *Johns-Manville* to allow injunctions of derivative claims).

20         Even if *Johns-Manville* were valid law in this Circuit, there are no derivative claims in this

21   case.  Johns-Manville filed for bankruptcy in 1982 in the Bankruptcy Court for the Southern

---

[8] *See* Memorandum Decision at 14 (citing Second Amended Order Confirming Third Modified Joint Plan of Reorganization, *In re Soc'y of Jesus, Or. Province*, No. 09-30938-elp11 (Bankr. D. Or. July 29, 2011), ECF No. 1336; Order Approving Third Amended and Restated Disclosure Statement and Confirming Third Amended and Restated Joint Plan of Reorganization, *In re Catholic Bishop of N. Alaska*, No. F08-00110-DMD (Bankr. D. Alaska Feb. 17, 2010), ECF No. 689; Order Confirming Second Amended Plan of Reorganization, *In re Catholic Bishop of Spokane*, No. 04-08822 (Bankr. E.D. Wash. Apr. 24, 2007), ECF No. 1921; Order Confirming Third Amended and Restated Joint Plan of Reorganization, *In re Roman Catholic Archbishop of Portland in Or.*, No. 04-37154-elp11 (Bankr. D. Or. Apr. 17, 2007), ECF No. 5097; Order Confirming Third Amended and Restated Plan of Reorganization, *In re Roman Catholic Church of Diocese of Tucson*, No. 4-04-bk-04721-JMM (Bankr. D. Ariz. Aug. 1, 2005), ECF No. 791.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

District of New York.  *Johns-Manville* at 90.  MacArthur Company and Western MacArthur Company (collectively referred to in the opinion and herein as "MacArthur"), were additional insureds under Johns-Manville's insurance policies.  *See id*. at 90.  MacArthur was also a distributor of Johns-Manville's products.  *Id*. After asbestos-related claims against Johns-Manville caused it to file bankruptcy, claimants went looking for other entities to sue, including MacArthur. *Id*.  Because MacArthur was an additional insured under Johns Manville's policies, it tendered the claims to Johns Manville's insurers to defend and indemnify.   As co-insureds under Johns Manville's policies, MacArthur and Johns-Manville shared the same policy limits.  *Id*.  Thus, any payment on behalf of MacArthur would have reduced the insurance available to Johns-Manville, and diminished the property of Johns-Manville's bankruptcy estate.  When Johns-Manville began settling with its insurers, MacArthur objected to the settlements because its insurance rights under the Johns-Manville policies were affected.

On appeal, the Second Circuit found that that MacArthur's interests in Johns-Manville's policies covered only those liabilities arising from Johns-Manville's products.  *Id*.  It therefore found that MacArthur's rights were completely derivative of, and limited by Manville's rights as the primary insured.  *Id*.  Whether the claims were against MacArthur or Johns-Manville, they would be paid by the same policies, subject to the shared limits.  The claims would collect out of the proceeds of Johns-Manville's insurance policies.  *Id*. at 92-93.

***The situation in this case is completely different***.  There is no entity in an analogous position to MacArthur; an additional insured, sued by asbestos claimants.  There is no entity, other than FBS, which claims coverage for asbestos liability under Repurchased Policies – certainly, the Appellants claim no interest in such policies.  There are no derivative claims in this case, at all. The Appellants are themselves insurance companies; they make no claim under the Repurchased Policies.  Thus, the Inter-Insurer Claims have no analogy in *Johns-Manville*.  There were no contribution or breach of contract claims among insurers in that case, at all.

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 21
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

Neither the Appellants' equitable contribution claims, nor their breach of contract claims against the Settling Insurers could have any effect on the Repurchased Policies or the insurance coverage limits available under FBS's insurance policies.  The breach of contract claims arise from the Settling Insurers' breaches of the terms of the CSA, a separate contract with the Appellants.  Dkt. # 24 (Cal. action).  Similarly, the Appellants' equitable contribution rights arise from equity—not from the Repurchased Policies.  If the Appellants succeed in their action against the Settling Insurers, they will be awarded compensatory damages or a contribution award, not the proceeds of any insurance policy.  If the Court approves FBS' Plan of Reorganization and the Settling Insurers then fund the trust, assets in the trust would be untouched by any claim of the Appellants.  The Appellants would obtain a judgment against the Settling Insurers, to be paid from the Settling Insurers' general assets.  *See, e.g., Polygon,* 143 Wn. App. at 774-781, where certain insurers brought claims against other insurers for equitable contribution to a settlement on behalf of their mutual insured.  The court in *Polygon* allocated the settlement between the insurers, making a contribution award to the overpaying insurers.  The insured in that case was unaffected. *Id.* at 776.  Similarly, in this case, the insured is unaffected by the Inter-Insurer claims.  Neither the Debtor nor the trust are defendants in the NU Declaratory Relief Action, nor could they be.  "A person is not liable to the plaintiff at all… if he or she has not been named by the plaintiff." *Koste v. Chambers,* 78 Wn. App. 691, 899 P.2d 814 (1995) (citations omitted).

Because the Inter-Insurer Claims have no effect on the property of the estate, and are not against FBS's policies, or through FBS, the Bankruptcy Court erred by treating the Inter-Insurer Claims as derivative claims.  The Bankruptcy Court conceded as much, when it stated:

> A third party asserts a claim that is derivative of an insurance policy when the third party "seeks to collect out of the proceeds of [the debtor's] insurance policies on the basis of [the debtor's] conduct." *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92-93 (2d Cir. 1988).  Derivative claims are inseparable from the debtor's own insurance policies. *Id.*

*In re Fraser's Boiler Serv., Inc.*, No. 18-41245-BDL, 2018 Bankr. LEXIS 2122, at *20 (Bankr. W.D. Wash. July 18, 2018).  Such is clearly not the case here.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

C.       **The Bankruptcy Court Erred in Permitting a Sale of the Repurchased Policies Free and Clear of Inter-Insurer Claims**

1.       **What Is Property of the Bankrupt Estate?**

The filing of a bankruptcy petition creates an estate consisting of all legal or equitable interests of a debtor in property as of the commencement of the case.  11 U.S.C. § 541(a).  The estate property includes any property liable for an allowable claim against a debtor.  11 U.S.C. § 541(a)(2)(B).  The Appellants do not contest that a debtor's insurance policies are property of a debtor's estate.  *See*, *e.g.*, *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1026 (9th Cir. 2012) (citations omitted).

However, the nature of a debtor's interests in property are determined by reference to state law.  *Butner v. United States*, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); *Hanf v. Summers (In re Summers)*, 332 F.3d 1240, 1242 (9th Cir. 2003).  State law also controls whether a cause of action is property of FBS or some third party.  *CBS, Inc. v. Folks (In re Folks)*, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997).  Assets of a third party are not property of the estate.  *Cf. Ginger Root Office Associates, LLC v. Farmer (In re Advanced Packaging & Products Co.)*, 426 B.R. 806 (C.D. Cal. 2010); *Pryor v. D'Alessio (In re D'Alessio)*, Nos. 8-08-72819-reg, 8-10-08187-reg, 8-12-08095-reg, 2014 Bankr. LEXIS 221, at *34 (Bankr. E.D.N.Y. Jan. 17, 2014).

Here, the Inter-Insurer Claims are not, cannot, be property of the estate.  The Inter-Insurer Claims belong to the Appellants.  Under applicable state law, contribution claims by an insurer against another insurer do not affect the insured.  *Polygon*, 143 Wn. App. at 776.  Equitable contribution involves the equitable allocation of the loss between the insurers, without any allocation to the insured.  *Id*.  Moreover, the Appellants' claims against the Settling Insurers for their contractual breaches of the CSA do not affect the Debtor's estate.   The Debtor is not a party to the CSA, and cannot interfere with a contract that does not involve it.  To do so would be a tort.  *Commodore v. University Mechanical Contractors, Inc.*, 120 Wn.2d 120, 137, 839 P.2d 314 (1992).   In sum, the Inter-Insurer Claims are not property of FBS's estate.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

### 2.    How Is Property of a Bankrupt Debtor Sold?

Section 363 governs the sale of property of the estate.  It states, in pertinent part: "(b)(1) The trustee, after notice and a hearing, may … sell, … other than in the ordinary course of business, *property of the estate*…" (emphasis added).  Thus, for a debtor to sell property, it must be property of the estate.  *See*, *e.g.*, *Ginger Root Office*, 426 B.R. 806.  "[A] bankruptcy court may not allow the sale of property as 'property of the estate' without first determining whether the debtor in fact owns the property."  *Hey v. Silver Beach LLC (In re Silver Beach LLC)*, No. NV-09-1049, 2009 Bankr. LEXIS 4587, at *15 (B.A.P. 9th Cir. Nov. 3, 2009) (citing *Moldo v. Clark (In re Clark)*, 266 B.R. 163, 172 (9th Cir. BAP 2001)).  If there is property of the estate to be sold, FBS must file a motion and provide notice of the opportunity to object.  11 U.S.C. § 363(b).  In approving such a sale, a bankruptcy court must make a number of findings.  *In re Wilde Horse Enters., Inc.*, 136 B.R. 830, 841 (Bankr. C.D. Cal. 1991).

A settlement of claims is also considered to be a sale of claims governed by Section § 363(b).  *See Goodwin v. Mickey Thompson Entm't Grp., Inc. (In re Mickey Thompson Entm't Grp., Inc.)*, 292 B.R. 415, 421 (B.A.P. 9th Cir. 2003) (citations omitted).  Thus, for the same reasons that a debtor cannot sell property unless it is property of the estate, it also cannot settle claims that are not property of the estate.  *See, e.g., In re Xenerga, Inc.*, 449 B.R. 594, 601 (Bankr. M.D. Fla. 2011).

The Repurchased Policies were property of FBS's estate; hence, FBS could sell them to the Settling Insurers pursuant to Section 363(b), and settle its claims thereby.  However, the Bankruptcy Court erred by approving such sale free and clear of the Inter-Insurer Claims, those claims, third party claims between non-debtors, were not property of the estate.

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 24
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

**3.    The Sale of the Repurchased Policies Free and Clear of the Inter-Insurer Claims Was Not Permissible**

      **a.    The Repurchased Policies Could Not Be Sold Free and Clear of the Inter-Insurer Claims Because they Are Not an Interest in the Property of FBS's**

Section 363(f) permits a debtor to sell property of the estate free and clear of the interests of other entities in such property.  It states:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if— (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest…

11 U.S.C. § 363.

For FBS to sell the Repurchased Policies free and clear of the Inter-Insurer Claims, the Inter-Insurer Claims must be interests in FBS's property. *Id*. The Inter-Insurer Claims are not "an interest in such property".  The Bankruptcy Court failed to address the issue, instead misunderstanding and misapplying the "derivative" analysis from *Johns-Manville*.  None of that flawed cursory analysis addresses whether the Inter-Insurer Claims are an interest in the Repurchased Policies.  They are not.

Instead, the Inter-Insurer Claims include only Appellants' separate property rights under the CSA, and equitable state law rights that arise because an insurer has paid more than its fair share. *See*, *e.g.*, *Polygon*, 143 Wash. App. at 795 (contribution claims between insurers arise because an insurer overpaid "*not from the rights of the insured*…and is not equivalent to standing in the shoes of the insured.") (*citing Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal. App. 4th 1279, 1294, 77 Cal. Rptr. 2d 296 (Cal. App. 1998) (emphasis added) (quotation marks omitted)).

It is black letter law that a Bankruptcy Court cannot approve a sale free and clear of such separate property interests. *See, e.g., In re Adelphia Communications Corp.*, 364 B.R. 518, 525-28 (Bankr. S.D.N.Y. 2007) (the rights of directors and officers under a debtor's insurance policies were not "interests" in the debtor's property and a sale of the insurance policies could not be free and clear of these rights). *Id*. at 525-28; *see also Overton's, Inc. v. Interstate Fire & Cas. Ins. Co.*

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 25
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

*(In re Sportstuff, Inc.)*, 430 B.R. 170 (B.A.P. 8th Cir. 2010) (same); *In re Forty-Eight Insulations, Inc.* 133 B.R. 973 (N.D. Ill. 1991) (same); *In Re Thorpe Insulation*, Order of Judge Bluebond (contribution rights of liability insurers cannot be cut off by a Section 363 sale.)  Declaration of Katrina Self, Docket No. 63, *see* 63-1, page 3 of 132, at ¶ 5.[9]

Any argument that Section 363(f) affords FBS a means to cut off, or otherwise interfere with, the Inter-Insurer Claims is without merit.

> **b.     Even if the Inter-Insurer Claims Were Interests in FBS's Property, FBS Failed to Show that it is Entitled to Relief under Section 363(f)**

The Bankruptcy Court erred in finding that the sale free and clear of the Inter-Insurer Claims was permissible under Section 363(f)(1).  Section 363(f) allows a debtor to sell property free and clear of interests in the property, if it is permissible under non-bankruptcy law.  *Id.*  The Bankruptcy Court relied upon RCW 7.60.260 and *King Cty. Travelers Indem. Co.*, 2018 U.S. Dist. LEXIS 64763 (W.D. Wash. Apr. 16, 2018) to find that the sale of the Repurchased Policies free and clear of the Inter-Insurer Claims was permissible under 363(f)(1).  Neither applies.

RCW 7.60.260 states, in pertinent part:

(1) The receiver, with the court's approval after notice and a hearing, may use, sell, or lease estate property other than in the ordinary course of business.…

(2) The court may order that a general receiver's sale of estate property either (a) under subsection (1) of this section, or (b) consisting of real property which the debtor intended to sell in its ordinary course of business be effected free and clear of liens and of all rights of redemption.…

(i) The property is real property …; or

(ii) The owner of the property or a creditor with an interest in the property ….

Upon any sale free and clear of liens authorized by this section, all security interests and other liens encumbering the property conveyed transfer and attach to the proceeds of the sale ….

---

[9] The Bankruptcy Court cited *In re Burns & Roe Enters., Inc.*, No. 00-41610RG (Bankr. D.N.J. Feb. 17, 2005), ECF No. 1200, an unpublished order by the New Jersey Bankruptcy Court, in support of its 363(f) analysis.  That case contains no analysis of whether contribution or breach of contract claims are an interest in a debtor's property.

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 26
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

Wash. Rev. Code § 7.60.260.  This statute is facially inapplicable because the Inter-Insurer Claims are not property of FBS's bankruptcy estate.  The Inter-Insurer Claims are not any kind of security interest in the Repurchased Policies, let alone a lien or a right of redemption, nor did the sale of the Repurchased Policies involve real property. [10]

In addition, *King County* does not support the sale of the Repurchased Policies to the Settling Insurers free and clear under these facts.  It is factually distinguishable because it did not involve an insurer's breach of contract claims against a co-insurer under a cost sharing agreement, only claims for equitable contribution.  Its holdings support Appellants, not the Debtor.  The Court held:  "… a bar order is only appropriate where 1) the proposed settlement is reasonable; and 2) the interests of the non-settling defendants are protected."  *Id.* at *15.  "[A] court should not prevent non-settling defendants from seeking contribution from a settling defendant, if doing so would expose the non-settling defendants to greater than their fair share of liability."  *Id.* at *16-17.  Also, the non-settling insurers *did not question* that the settlements provided them with adequate protection.  Finally, the Court granted the non-settling insurers a setoff for the settling insurers' settlement payments.  *Id.* at 17-18.

Moreover, the standard for approving a partial settlement such as that approved by the Court in *King County* is quite restrictive.  If such a settlement limits settling defendants' ability to seek further contribution from the settling defendants, then it must also limit the subsequent exposure of the nonsettling defendants.  *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1232 (9th Cir. 1989).  ***"The limit must be the nonsettling defendants' actual percentage of liability for the amount of total damages determined at trial."***  *Id.* (emphasis added).

Here, there is record evidence that the Settlements were unreasonable.  If Appellants are enjoined from seeking contribution, they will pay more than their fair share of liability, because they will have to defend and indemnify the Debtor in the tort system, with no contribution from the Settling Insurers. Further, the Bankruptcy Court did not award Appellants a setoff for the

---

[10] Appellants have been unable to find any case applying RCW 7.60.260 to insurance policies.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

Settlement payments.  The Settlements include an illusory judgment reduction provision.  It has no provision for its implementation, nor does it adequately compensate Appellants for settlements or the costs of defense.  Thus, a sale free and clear should not have been permitted.

### D.    The Sale Was Not in Good Faith

If a debtor wishes to sell property of the estate under Section 363(b), it has the burden to prove that it proposed the sale in good faith.  *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. 1996) (citations omitted).  A sale must be "closely scrutinized."  *Id*.  Good faith involves the "integrity of the transaction," while bad faith examples are "collusion between the seller and buyer."  *Id*.  It is difficult at the time of a sale to make a factual determination regarding good faith.  *Thomas v. Namba (In Re Thomas)*, 287 B.R. 782, 785 (B.A.P. 9th Cir. 2002); *Schugg v. Lyon (In re Schugg)*, 2006 U.S. Dist. LEXIS 33259, at *31 (D. Ariz. May 22, 2006).

> The difficulty with the factual determination is that evidence genuinely probative of "good faith" is not commonly introduced, or even reasonably available, at the time a bankruptcy court approves a sale. To the contrary, the fact-intensive evidence regarding the buyer and relations with parties in interest that may indicate fraud, collusion, or unfair advantage-i.e. evidence suggesting lack of "good faith"-tends to emerge after the sale.

*Thomas*, 287 B.R. at 785.  Hence, it was easy to get it wrong.  Here, the problem is greater, because both FBS and the Settling Insurers have vigorously resisted any discovery, and the Settlements were approved before Appellants had the opportunity to conduct any meaningful discovery.

To make a good faith finding, the Bankruptcy Court should have held an evidentiary hearing and provided time for ample discovery.  *T. C. Inv'rs v. Joseph (In re M Capital Corp.)*, 290 B.R. 743, 749 (B.A.P. 9th Cir. 2003); *Schugg*, 2006 U.S. Dist. LEXIS 33259, at *33.  No such hearing was held.  Moreover, evidence submitted to the Bankruptcy Court must be credible, not simply the self-serving declarations of FBS's lawyers.  *Debilio v. Golden (In re Debilio)*, 2014 Bankr. LEXIS 3886, at *19 (B.A.P. 9th Cir. Sep. 11, 2014).  "Boilerplate good faith findings in orders will not suffice, and courts should avoid the temptation to sign such orders without an

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 28
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

evidentiary foundation." *M Capital*, 290 B.R. at 752.   Such evidence includes independent appraisals of the value of the property purchased, which is notably lacking here. *Zuercher Tr. of 1999 v. Kravitz (In re Zuercher Tr. of 1999)*, 2014 Bankr. LEXIS 5061, at *30 (B.A.P. 9th Cir. Dec. 17, 2014).

Neither FBS's principal nor the prepetition Receiver submitted evidence as to the negotiations with any particular insurance company.   FBS did not provide any discussion or analysis of the claims against or the defenses available to the Settling Insurers that might affect the value of the Repurchased Policies.  FBS should have presented evidence of the payments made under the Repurchased Policies, so that the amount of remaining coverage could be determined. FBS never submitted any evidence relating to exhaustion of the Repurchased Policies.  FBS's only submission, in the form of declarations,    relates to *Appellants' policies*, not the Repurchased Policies.[11]

Nor could FBS have submitted any evidence supporting a good faith finding, because the Settlements were not in good faith.  As discussed above, the Bankruptcy Code requires that for FBS to establish a trust to pay asbestos claims, it must comply with Section 524(g).  FBS is not doing that.  Nor is there evidence that the Settling Insurers' policies are nearing exhaustion.  From the little evidence that was presented by the Debtor (a list of the policies, and their limits) it appears that as much as $56 million of coverage will be lost if the settlements are upheld.  ECF No. 397 at 5. In fact, there was no legitimate reason for FBS to settle.

Nor was there any claim pressure on FBS forcing it into bankruptcy.  ***No asbestos case against the FBS has ever gone to judgment.***  Docket No. 134-1; Winstead Tr. at p. 102, l. 16-22. Any benefits of this bankruptcy case will flow only to non-debtors – FBS's favored insurance companies and lawyers – not to FBS's bankruptcy estate.  FBS's asbestos creditors lose money

---

[11] There was (i) a letter dated January 21, 2015 from Resolute Management Inc.'s Katrina McCusker discussing National Union's assertion of exhaustion of policies issued to Debtor; and (ii) a letter from Dominica Anderson, counsel for LMI, discussing an issue of settlement funds being distributed to pay certain shares of asbestos claims. This letter does not discuss exhaustion of any insurer's policies.

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

because over a quarter of the sale proceeds, which before the bankruptcy belonged to the claimants, will be diverted to pay FBS's lawyers and professionals.  Moreover, the selective settlements consign Appellants and the holders of meritorious asbestos claims to years of litigation, eliminating the usual justification for settlement – finality and peace.  That such decisions are being made by lawyers with a vested interest in the continuation of the litigation only highlights the lack of good faith.

The question of exhaustion is a red herring.  FBS ignored the point that none of the Settling Insurers could ever be required to pay more than its limits, while, without the Settlements, and assuming there is coverage, each insurer must pay the full limits of the policies against valid claims.  Once the limits are gone, there is no further obligation to pay.

FBS failed to carry its burden in proving that the sale was in good faith, as it provided no evidence on the good faith issue or otherwise demonstrated that the sale was conducted with integrity and not the result of collusion.  The arguments made by the Appellants above are all arguments that the Appellants should have been afforded an opportunity to present in the context of an evidentiary hearing at which the conclusory declarations of the Debtor could be appropriately tested and challenged.

## VII.   <u>CONCLUSION</u>

WHEREFORE, Appellants respectfully request that the Court grant their appeal and reverse the Orders below.

Dated:  October 23, 2018

_/s/ Aron M. Oliner_____
Aron M. Oliner, Attorneys for Appellant
Certain Underwriters at Lloyd's, London and
Certain London Market Insurance Companies

Jessica A. Bohl, WSBA #47729
Aron M. Oliner (*pro hac vice*)
Dominica C. Anderson (*pro hac vice*)
Duane Morris LLP

_/s/ Michael M. Feinberg_____
Michael M. Feinberg, Attorneys for Appellant
National Union Fire Insurance Company of
Pittsburgh, PA

Michael M. Feinberg, WSBA #11811
Karr Tuttle Campbell
701 Fifth Avenue, Suite 3300
Seattle, WA  98104

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone:  415.957.3000
Facsimile:  415.957.3001
Email:  JABohl@duanemorris.com

Russell W. Roten (*pro hac vice*)
Jeff D. Kahane (*pro hac vice*)
Duane Morris LLP
865 S. Figueroa St., Suite 3100
Los Angeles, CA 90017-5450
Telephone:  213.689.7400
Facsimile:  213.689.7401

Telephone:  206.223.1313
Facsimile:  206.682.7100
Email:  mfeinberg@karrtuttle.com

DM1\9113136.2
APPELLANTS' OPENING BRIEF – Page 31
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2018, I electronically filed the following documents:

- **APPELLANTS' OPENING BRIEF**
- **APPELLANTS' APPENDIX Volume I of VI – Pages 1 to 421**
- **APPELLANTS' APPENDIX Volume II of VI – Pages 422 to 867**
- **APPELLANTS' APPENDIX Volume III of VI – Pages 868 to 1198**
- **APPELLANTS' APPENDIX Volume IV of VI – Pages 1199 to 1632**
- **APPELLANTS' APPENDIX Volume V of VI – Pages 1633 to 2092**
- **APPELLANTS' APPENDIX Volume VI of VI – Pages 2093 to 2467**

with the Clerk of the Court using the CM/ECF System, which in turn automatically generated a Notice of Electronic Filing (NEF) to all parties in the case who are registered users of the CM/ECF system. The NEF for the foregoing specifically identifies recipients of electronic notice. I hereby certify that the foregoing documents were sent to the following CM/ECF participants:

| | |
|---|---|
| Bankruptcy Appeals (TAC) | ECFHelp_Tacoma@wawb.uscourts.gov |
| Aron M. Oliner | roliner@duanemorris.com |
| | dmicros@duanemorris.com |
| Barbara J Brady | bbrady@karrtuttle.com |
| | ksagawinia@karrtuttle.com |
| Charles R Ekberg | ekbergc@lanepowell.com |
| | docketing-sea@lanepowell.com |
| | intlekofert@lanepowell.com |
| Craig J Litherland | litherlandc@gotofirm.com |
| Danial D Pharris | pharris@lasher.com |
| | ullom@lasher.com |
| Daniel L Syhre | dsyhre@bpmlaw.com |
| | dmarsh@bpmlaw.com |
| Darren R. Krattli | dkrattli@eisenhowerlaw.com |
| | jfernando@eisenhowerlaw.com |
| Diana Kay Carey | dcarey@karrtuttle.com |
| | mhernandez@karrtuttle.com |
| | mmunhall@karrtuttle.com |
| Dominica C. Anderson | dcanderson@duanemorris.com |
| | frbonilla@duanemorris.com |
| Filiberto Agusti | fagusti@steptoe.com |
| Frank Winston , Jr | fwinston@steptoe.com |

DM1\9113136.2
CERTIFICATE OF SERVICE
re APPELLANTS' OPENING BRIEF – Page 1
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

| | | |
|---|---|---|
| 1 | Jacob Cohn | jcohn@gordonrees.com |
| | | tdonahue@gordonrees.com |
| 2 | James P. Ruggeri | jruggeri@goodwin.com |
| 3 | Jessica Bohl | jabohl@duanemorris.com |
| 4 | | AutoDocketSFO@duanemorris.com |
| | | jysoliman@duanemorris.com |
| 5 | Joshua Taylor | jrtaylor@steptoe.com |
| | Joshua D Weinberg | jweinberg@goodwin.com |
| 6 | Katrina F Self | kself@eisenhowerlaw.com |
| | | crochelle@eisenhowerlaw.com |
| 7 | Kevin P Hanchett | hanchett@lasher.com |
| 8 | | cross@lasher.com |
| | Lauren Ashley Dorsett | laurendorsett@dwt.com |
| 9 | | elainehuckabee@dwt.com |
| | | seadocket@dwt.com |
| 10 | Mark D Plevin | mplevin@crowell.com |
| 11 | Mark D Waldron | mark@mwaldronlaw.com |
| | | diana@mwaldronlaw.com |
| 12 | Michael M. Feinberg | mfeinberg@karrtuttle.com |
| | | mmunhall@karrtuttle.com |
| 13 | | rmoreau@karrtuttle.com |
| | Michael M. Sperry | michaels@schweetlaw.com |
| 14 | Nancy Anne Brownstein | nancybrownstein@dwt.com |
| 15 | | christinekruger@dwt.com |
| | | seadocket@dwt.com |
| 16 | Philip R Matthews | prmatthews@duanemorris.com |
| 17 | | vcdomantay@duanemorris.com |
| | Russell W. Roten | rwroten@duanemorris.com |
| 18 | | dmartinez@duanemorris.com |
| | Sarah N Turner | sturner@grsm.com |
| 19 | | cjacobs@grsm.com |
| | | kahansen@grsm.com |
| 20 | Sarah Rose Flynn | sarah.flynn@usdoj.gov |
| | Steven Soha | courtnotices@sohalang.com |
| 21 | | low@sohalang.com |
| 22 | | soha@sohalang.com |
| | Thomas Scott Linde | tomlinde@schweetlaw.com |
| 23 | | Karenl@schweetlaw.com |
| | | maureenf@schweetlaw.com |
| 24 | | |
| 25 | | |
| 26 | | |

DM1\9113136.2

CERTIFICATE OF SERVICE
re APPELLANTS' OPENING BRIEF – Page 2
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001

1    I hereby further certify that I caused a copy of the foregoing document (Appellants'

2    Opening Brief w/o Appellants' Appendix, Vols. I - VI) to be served via U.S. First Class Mail on

3    the following non-CM/ECF participant:

4         DJO Services LLC
5         1299 4th Street
          San Rafael, CA 94901
6

7         I declare under penalty of perjury under the laws of the United States of America and the

8    State of Washington that the foregoing is true and correct.  Executed on the 23rd day of October,

9    2018, at San Francisco, California.

10

11                                   /s/ Deanna Micros (xxx-xx-5693)
                                     Deanna Micros, Legal Assistant
12                                   dmicros@duanemorris.com

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE
re APPELLANTS' OPENING BRIEF – Page 3
Case No. 3:18-cv-05637-RBL

Duane Morris LLP
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA  94105-1127
Telephone: +1 415 957 3000
Fax: +1 415 957 3001