1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Ronald B. Leighton

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

In Re:

FRASER'S BOILER SERVICE, INC.,

                      Debtor.

Appeal No. 18-T007
Appeal No. 18-T008

(Consolidated)
Case No. 3:18-cv-05638 RBL

Case No. 3:18-cv-05637-RBL (Lead Case)

<u>**APPELLEE'S BRIEF**</u>

(Oral argument requested)

**ATTORNEYS FOR APPELLEE**
**FRASER'S BOILER SERVICE, INC.**

Darren R. Krattli, WSBA # 39128
Katrina F. Self , WSBA # 52359
EISENHOWER CARLSON PLLC
1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Phone:  (206) 572-4500
Email: Dkrattli@eisenhowerlaw.com
Email: Kself@eisenhowerlaw.com

Craig Litherland, Admitted *Pro Hac Vice*
Daniel I. Wolf, Admitted *Pro Hac Vice*
GILBERT LLP
1100 New York Ave, NW, Suite 700
Washington, DC 20005
Phone: (202) 772-2264
Email: litherlandc@gotofirm.com
Email: wolfd@gotofirm.com

APPELLEE'S BRIEF
Case No. 3:18-cv-05637-RBL



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. Civ. P. 7.1, Fraser's Boiler Service, Inc. ("Fraser's"), Appellee, and Debtor in Case No. 18-41245-BDL filed in the United States Bankruptcy Court in and for the Western District of Washington at Tacoma, is a Washington corporation.  DJO Services, LLC ("DJO") is currently the sole shareholder of Fraser's.  No parent corporation and no publicly held corporation owns 10% or more of Fraser's stock.

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     BASIS OF APPELLATE JURISDICTION.........................................3

III.    STATEMENT OF THE ISSUES...........................................................3

IV.     STANDARD OF REVIEW ...................................................................3

V.      STATEMENT OF THE CASE...............................................................4

    A.      The Debtor and Asbestos-Related Claims ...................................4

    B.      The Debtor's Insurance Coverage ...............................................4

    C.      Receivership Proceedings .............................................................5

    D.      Bankruptcy Proceedings ...............................................................6

        1.      Motions to Approve Section 363 Sale ...............................6

        2.      The Rulings Appealed From ...............................................7

VI.     SUMMARY OF ARGUMENT ..............................................................9

VII.    ARGUMENT ........................................................................................11

    A.      The Bankruptcy Court Properly Found It Had the Power to Allow the Debtor to Sell the Policies "Free and Clear" of Interests Under Section 363 and Enjoin Appellants' Derivative Claims to Effectuate That Sale ......................................................................................11

        1.      Section 363 Authorizes the Sale of Assets Including Insurance Policies "Free and Clear" of "Interests" ........................................11

            a)      The enjoined claims are "interests" in the policies and thus may be sold "free and clear" under Section 363 ........12

            b)      The sale was proper under Section 363(f)(1) because non-bankruptcy law permits the barring of contribution claims14

        2.      The Bankruptcy Court Properly Effectuated the "Free and Clear" Sale by Enjoining, Under Section 105(a), the Claims Barred Under Section 363 ........................................................................17

            a)      The Bankruptcy Court had the power to issue an injunction under Section 105(a) to effectuate the Section 363 sale ...............................................................17

            b)      The limited injunctions here are distinguishable from nondebtor third-party releases, prohibited by Ninth Circuit precedent ..................................................................19

    B.      The Bankruptcy Court Had Subject Matter Jurisdiction to Enjoin the Claims ........................................................................................22



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1

C.      The Sale was in Good Faith and Had a Valid Business Justification ........23

VIII.  CONCLUSION ....................................................................................................25

IX.    CERTIFICATE OF COMPLIANCE ..................................................................25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26



1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1

## **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*In re 240 N. Brand Partners, Ltd.*,
   200 B.R. 653 (B.A.P. 9th Cir. 1996) ................................................................ 23

*In re American Hardwoods, Inc.*,
   885 F.2d 621 (9th Cir. 1989) .................................................................19, 21, 23

*Axis Surplus Ins. Co. v. St. Paul Fire & Marine Ins. Co.*,
   947 F. Supp. 2d 1129 (W.D. Wash. 2013) ........................................................12

*Bank of Am. v. Travelers Indem. Co.*,
   No. C07-0322-RSL, 2009 WL 529227 (W.D. Wash. Mar. 2, 2009)................................15

*In re Berkeley Delaware Court, LLC*,
   834 F.3d 1036 (9th Cir. 2016) ........................................................................24

*In re Burns & Roe Enters., Inc.*,
   No. 00-41610RG (Bankr. D.N.J. Feb. 17, 2005), ECF. No. 1200....................................18

*Canal Indem. Co. v. Global Dev., LLC*,
   No. 2–14–CV–00823–RSM, 2015 WL 347753 (W.D. Wash. Jan. 26,
   2015) ........................................................................................................15

*In re Crystal Props., Ltd.*,
   268 F.3d 743 (9th Cir. 2001) ...........................................................................3

*In re Dow Corning Corp.*,
   198 B.R. 214 (Bankr. E.D. Mich. 1996) ........................................................17, 18

*In re Ewell*,
   958 F.2d 276 (9th Cir. 1992) ............................................................................3

*In re Fietz*,
   852 F.2d 455 (9th Cir. 1988) ..........................................................................23

*In re Filtercorp, Inc.*,
   163 F.3d 570 (9th Cir. 1998) ..........................................................................24

*Gonzales v. Parks*,
   830 F.2d 1033, 1037 (9th Cir. 1987) ..................................................................1

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

*Johnson v. First Nat'l Bank of Montevideo, Minnesota*,
  719 F.2d 270, 273 (8th Cir. 1983) ..................................................................20

*King Cnty. v. Travelers Indem. Co.*,
  No. 14-CV-1957 BJR, 2018 WL 1792189 (W.D. Wash. Apr. 16, 2018)...................14, 15

*In re Lowenschuss*,
  67 F.3d 1394 (9th Cir. 1995) ............................................................19, 20, 21

*MacArthur Co. v. Johns-Manville Corp.*,
  837 F.2d 89 (2d Cir. 1988).............................................................13, 21

*In re Madison Assocs.*,
  183 B.R. 206 (Bankr. C.D. Cal. 1995)..........................................................21

*Minoco Grp. of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp.*,
  799 F.2d 517 (9th Cir. 1986) ...................................................................14

*Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*,
  191 P.3d 866 (Wash. 2008)..................................................................12

*In re Pegasus Gold Corp.*,
  394 F.3d 1189 (9th Cir. 2005) ..............................................................23

*In re Plant Insulation Co.*,
  No. 09-31347, 2014 WL 3881427 (Bankr. N.D. Cal. June 27, 2014) ..............................18

*Puget Sound Energy v. Certain Underwriters at Lloyd's*,
  138 P.3d 1068 (Wash. Ct. App. 2006).........................................................15

*Ratanasen v. State of Cal., Dep't of Health Servs.*,
  11 F.3d 1467 (9th Cir. 1993) ..............................................................3, 24

*In re Roman Catholic Archbishop of Portland in Or.*,
  No. 04-37154-elp11 (Bankr. D. Or. Apr. 17, 2007), ECF No. 5097……………..........19

*In re Roman Catholic Bishop of Stockton*,
  No. 14-20371, 2017 WL 118013 (Bankr. E.D. Cal. Jan. 10, 2017) ....................17, 18, 23

*In re Roman Catholic Church of Diocese of Tucson*,
  No. 4-04-bk-04721-JMM (Bankr. D. Ariz. Aug. 1, 2005), ECF. No. 791 .......................19

*In re Sunland, Inc.*,
  No. 13-13301-tr7, 2014 WL 7011747 (Bankr. D.N.M. Dec. 11, 2014) .....................17, 19



1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

*In re Thorpe Insulation Co.*,
    No. 07-19271 (Bankr. C.D. Cal. Nov. 25, 2008), *appeal dismissed*, 2010
    WL 3199821 (9th Cir. Mar. 5, 2010) ............................................................18

*In re United Gilsonite Labs.*,
    No. 5:11-bk-02032-RNO, 2014 WL 7778849 (Bankr. M.D. Pa. Dec. 8,
    2014) ..........................................................................................................18

*In re Webb*,
    954 F.2d 1102 (5th Cir. 1992) ........................................................................3

*In re Wilde Horse Enters, Inc.*,
    136 B.R. 830 (Bankr. C.D. Cal. 1991) ...........................................................24

*In re Wilshire Courtyard*,
    729 F.3d 1279 (9th Cir. 2013) .......................................................................22

*In re Yellowstone Mountain Club, LLC*,
    460 B.R. 254 (Bankr. D. Mont. 2011) ...........................................................21

**Statutes**

28 U.S.C. § 157 ................................................................................. *passim*

28 U.S.C. § 158(a)(1) .............................................................................3

28 U.S.C. § 1334(b) .............................................................................22

Bankruptcy Code Section 105 ............................................................ *passim*

Bankruptcy Code Section 363 ............................................................ *passim*

Bankruptcy Code Section 524(e) ...............................................10, 19, 20

Bankruptcy Code Section 524(g) ...........................................................25



1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# I.   INTRODUCTION

Appellee Fraser's Boiler Service, Inc. ("Fraser's" or the "Debtor") asks this Court to affirm the Bankruptcy Court's orders approving two settlement agreements between the Debtor and certain insurers (the "Settling Insurers").  The settlement agreements provide for the sale of the Debtor's insurance policies back to the Settling Insurers for an aggregate amount in excess of $13 million.  This money will create the bulk of a liquidating trust, created to handle asbestos-related claims previously asserted against the Debtor.

The Bankruptcy Court found that the sale of the insurance policies—property of the bankruptcy estate—were proper under Sections 363(b) and (f) of the Bankruptcy Code. Section 363(f) provides that property of the estate may be sold "free and clear of any interest," as long as one of five requirements enumerated in Sections 363(f)(1)–(5) is met. The sale here qualifies under Section 363(f)(1), which permits the sale if "applicable nonbankruptcy law permits sale of such property free and clear of such interest."  Because the sale comports with Section 363(f), the insurance policies may be sold back to the Settling Insurers "free and clear" of any "interest."

Here, Appellants' contribution and breach of contract claims[1] are "interests" in the assets of the bankruptcy estate.  For an insurer to have any contribution claim against another insurer, both insurers must be legally obligated to provide defense or indemnity for the same claim.  The insurer against whom contribution is sought must be legally obligated to defend or indemnify the insured.  That legal obligation of the insurer against whom contribution is

---

[1] As discussed in more detail below, Appellants' breach of contract claims are essentially contribution claims.  Appellants failed to assert or present evidence of these claims at the time of the hearing on the motion below and have thus waived any arguments related to such claims on appeal.  *Gonzales v. Parks*, 830 F.2d 1033, 1037 (9th Cir. 1987) (prohibiting the assertion of an argument that was "raised for the first time on . . . appeal").

APPELLEE'S BRIEF – 1
Case No. 3:18-cv-05637-RBL



1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1 sought will only be legally obligated pursuant to the terms of that insurer's policy issued to

2 the insured, limited by any defenses that would have been available to the insurer had the

3 insured sought coverage.  The claims derive from the Debtor's insurance policies and the

4 Debtor's rights to defense and indemnity thereunder.  The contribution claim is just a claim

5 made under the policy issued to the insured by the insurer against whom contribution is

6 sought; it is a use of the rights held by the insured under the policy it obtained from the

7 insurer against whom contribution is asserted.  Because it is a right derived from the Debtor's

8 assets and because non-bankruptcy law permits barring contribution claims, the sale of the

9 insurance policies under Section 363(f) provides for a sale "free and clear" of appellants'

10 contribution claims.

11     Despite Appellants' attempts to argue that the Bankruptcy Court relied solely on

12 Section 105(a) for its power to enjoin the contribution claims, the Court enjoined those

13 claims to enforce the plain language of Section 363(f).  The Bankruptcy Court looked to its

14 injunctive powers under Section 105(a), which allows the Court to "issue any order, process,

15 or judgment that is necessary or appropriate to carry out the provisions of [title 11]," to

16 effectuate the Section 363(f) sale and provide meaning to the statute's "free and clear"

17 language.  The injunction acts as a mechanism to protect the Settling Insurers from litigation

18 by persons who previously had "interests" in the property.  Section 105(a) injunctions are

19 common complements to Section 363(f) sales.

20     Given that the insurance policies, and the interests in those policies, were sold in

21 accordance with the plain language of Section 363, and that the subsequent protective

22 injunction was properly issued in accordance with the plain language of Section 105, the

APPELLEE'S BRIEF – 2
Case No. 3:18-cv-05637-RBL

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Debtor respectfully requests that the Court affirm the Bankruptcy Court's orders approving the settlement agreements and the sale of insurance policies thereunder.

## II.    BASIS OF APPELLATE JURISDICTION

The U.S. District Court for the Western District of Washington has appellate jurisdiction in this case under 28 U.S.C. § 158(a)(1).

## III.    STATEMENT OF THE ISSUES

1.    Did the Bankruptcy Court err when it (a) approved settlement agreements that provided for the sale of insurance policies free and clear of any interests as permitted under Sections 363(b) and (f) of the Bankruptcy Code, and (b) issued an injunction to effectuate that sale pursuant to the Court's power under Section 105(a) of the Bankruptcy Code?

2.    Did the Bankruptcy Court clearly err when it found the sale to be in good faith?

## IV.    STANDARD OF REVIEW

When reviewing a bankruptcy court's decision, the "district court functions as [an] appellate court and applies the standard of review generally applied in federal court appeals." *In re Crystal Props., Ltd.*, 268 F.3d 743, 755 (9th Cir. 2001) (alteration in original) (quoting *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). "[F]actual findings of the bankruptcy court are reviewed for clear error, and its conclusions of law are reviewed de novo." *Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467, 1469 (9th Cir. 1993) (quoting *In re Ewell*, 958 F.2d 276, 279 (9th Cir. 1992)). The Bankruptcy Court's factual findings here, that the sale had a legitimate business justification and was proposed in good faith, are therefore reviewed for clear error.

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## V.   STATEMENT OF THE CASE

### A.   The Debtor and Asbestos-Related Claims

Fraser's was formerly a company engaged in erecting and repairing marine, industrial, and commercial boilers.  (Fraser's Disclosure Statement, Dkt. #52 at p. 63).[2] During the 1990s, individuals with asbestos-related diseases began making claims against Fraser's.  (*Id.*).  Since that time, over 1,700 claims have been filed against Fraser's in California, Oregon, and Washington.  (*Id.*).  Of these claims, Fraser's was dismissed in more than 600 cases and settled over 500.  (*Id.* at 64).  Over 50 cases remain pending.  (*Id.* at 63–64).  In the course of litigating these claims, Fraser's has paid over $17 million in settlements and over $18 million in defense costs.  (*Id.* at 64).

### B.   The Debtor's Insurance Coverage

Fraser's is insured under primary and excess (including umbrella excess) Comprehensive General Liability insurance policies, which obligate insurers to pay, *inter alia*, for liability in connection with claims alleging bodily injury.  (*Id.*).  The policies also generally obligate insurers to pay defense costs.  (*Id.*).

In August 2015, certain of Fraser's insurers entered into a Cost-Sharing Agreement ("CSA") related to their obligations for the defense and indemnity of asbestos-related claims. The Debtor was not a party to the CSA.  (Settlement Agreement and Release, Dkt. #62-1 at p. 322).  Two years later, the insurers agreed to extend the Agreement's term to August 18, 2019.  (*Id.*).  Any extension of the CSA beyond August 18, 2019, however, is far from a foregone conclusion.  For that to happen, all participating insurers would have to agree to

---

[2] All page numbers are references to Appellants' Appendix.

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

renew the CSA—including those who have clearly decided they would rather settle their obligations to the Debtor.

The CSA does not provide the Debtor with any meaningful assurance that asbestos-related claims will be adequately addressed indefinitely.  Nothing in the CSA prevents any insurer who initially contributed to the defense or indemnity costs related to any claim from later seeking to recover those costs from the Debtor.  At least one of the insurers who was a party to the CSA has done exactly that—that is, sued the Debtor to recover some costs it paid in connection with the defense and indemnity of asbestos-related claims.  (Complaint for Declaratory Judgment, Dkt. #165-2 at p. 1215).

### C.     Receivership Proceedings

After several years of losing money, Fraser's became insolvent and, in 2014, petitioned for the appointment of a receiver in the Superior Court of Washington for King County ("Receivership Court").  (Fraser's Disclosure Statement, Dkt. #52 at p. 63).

While in receivership, Fraser's reached two settlement agreements with certain insurers.  First, Fraser's reached an agreement with Providence Washington Insurance Company ("PWIC"), wherein PWIC would provide a lump sum payment in exchange for a release of continuing obligations related to asbestos-related claims.  (*Id.* at 65; Declaration of Craig Litherland, Dkt. #62 at p. 309).[3]  The Receivership Court approved this settlement agreement on January 31, 2018.[4]  (Fraser's Disclosure Statement, Dkt. #52 at p. 65).  Second, Fraser's reached a somewhat similar agreement (the "January 2018 Settlement Agreement") with certain other insurers:  (1) Allianz Underwriters Insurance Company and Chicago

---

[3] PWIC had previously asserted its policies were exhausted.  (Fraser's Mot. for Order Approving Certain Insurers Settlement and Sale, Dkt. #61 at p. 271).
[4] This settlement agreement is currently on appeal in state court.



1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Insurance Company (collectively, "Allianz"); (2) Century Indemnity Company (successor to Insurance Company of North America) and Pacific Employers Insurance Company (collectively, "Century"); (3) Hartford Accident and Indemnity Company ("Hartford"); and (4) Zurich American Insurance Company (as successor-in-interest to Maine Bonding and Casualty Company) ("Zurich").  (*Id.* at 65–66).

Under the January 2018 Settlement Agreement, Allianz, Century, Hartford, and Zurich agreed to repurchase the insurance policies they issued to Fraser's for a lump sum of over $11 million.  (*Id.* at 66).  As a condition of the Agreement, Fraser's agreed to go through bankruptcy proceedings so that the Settling Insurers could receive the benefits of a Section 363 sale and an accompanying injunction pursuant to Section 105(a).  (*Id.* at 67).

**D.      Bankruptcy Proceedings**

       **1.      Motions to Approve Section 363 Sale**

Fraser's filed a voluntary petition for relief under Chapter 11 on April 9, 2018. (Fraser's Mot. for Order Approving Certain Insurers Settlement and Sale, Dkt. #61 at p. 270). On April 27, 2018, Fraser's moved for the Court to (1) approve an amended version of the January 2018 Settlement Agreement; (2) authorize the sale under the Agreement of the policies to the Settling Insurers pursuant to Section 363(f) free and clear of all liens, claims, and interests; and (3) enjoin various claims against the Settling Insurers pursuant to Section 105(a).  (*Id.* at 269–68).  A hearing on this motion was held on June 21, 2018.  (Hr'g Tr. at 2346, June, 21 2018).

During the bankruptcy case, Fraser's struck a similar settlement agreement (the "Travelers Settlement Agreement") with Travelers Indemnity Company ("Travelers") and moved for its approval on June 26, 2018.  (Fraser's Mot. for Order Approving Travelers

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Settlement and Sale, Dkt. #226 at p. 1666).  A hearing on this motion was held on July 19, 2018.  (Hr'g Tr. at 1692, July 19, 2018).

### 2. The Rulings Appealed From

The Bankruptcy Court issued a Memorandum Decision on July 18, 2018, approving the Settlement Agreements.  (Mem. Decision on Mot. for an Order Approving Certain Insurers Settlement ("Mem. Dec."), Dkt. #284 at p. 2064).   The Court followed the Memorandum Decision with two orders on July 25, 2018, approving the January 2018 Settlement Agreement (as amended) and the Travelers Settlement Agreement, respectively. (Order on Mot. Approving Certain Insurers Settlement, Dkt. #300, 301 at p. 2451, 2338). Both orders refer back to and incorporate the ruling in the Memorandum Decision.

The Memorandum Decision outlined the Court's subject matter jurisdiction and authority to approve the "free and clear" sale under Section 363 and issue an injunction under Section 105(a).  The Court found it had "core" subject matter jurisdiction under 28 U.S.C. §§ 157(b)(2)(A), (N), and (O).  That is, the Court found that the proceedings were "matters concerning the administration of the estate," "orders approving the sale of property," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor" relationship.  *Id.*

The Court found grounds existed to sell the insurance policies free and clear of all interests under Sections 363(f)(1), (2), and (5).  (Mem. Dec., Dkt. #284 at p. 2072).  The Court determined that the sale complied with Section 363(f)(1) because it was permissible under non-bankruptcy Washington state law, complied with Section 363(f)(2) because "holders of asbestos claims have given the equivalent of their consent by submitting ballots in favor of the pre-petition plan of reorganization and by the Official Committee of

APPELLEE'S BRIEF – 7
Case No. 3:18-cv-05637-RBL

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Unsecured Creditors' filing of a reply in support of the Settlement Agreement," and complied with Section 363(f)(5) because "asbestos-related tort claimants could be compelled to accept a money satisfaction of their interests in the policies in a legal or equitable proceeding." (*Id.* at 2071–72).

The Court further concluded that an "injunction is necessary and appropriate to carry out the sale under Section 363(f) pursuant to Section 105(a)." (*Id.* at 2078). Without an injunction, the Court reasoned, "the idea of a sale free and clear would be denuded of its meaning." (*Id.*). The Settling Insurers "would not be willing to purchase the insurance policies, as they would continue to have potential liability to the non-settling insurers." (*Id.*).

In approving the injunction, the Court distinguished between enjoining the contribution claims here and global third-party releases prohibited in the Ninth Circuit. The Court explained, "the crux of the difference is that, unlike releases of all claims against a third party, the supplemental injunction is narrowly tailored to only apply to derivative claims." (*Id.* at 1076). The contribution claims, the Court reasoned, are "derived from the insurance policies being sold back to the [Settling] Insurers free and clear pursuant to the Settlement Agreement." (*Id.*). The contribution claims are thus "[d]erivative claims [and] are inseparable from the debtor's own insurance policies." (*Id.*). The Court determined that because the injunction only impacts derivative claims, it is "not the equivalent of a discharge of a third party." (*Id.*). Furthermore, the "injunction does not provide for retention of the asset by the debtor or a purchasing third party, but rather the payment of the cash value of those assets into a liquidating trust that is essential to Fraser's plan of reorganization." (*Id.*).

Last, the Court determined that the sale had a valid business justification and was proposed in good faith. (*Id.* at 2072). More specifically, the Court found the "sale resolve[d]



several insurance coverage disputes that risk[ed] leaving the asbestos-related tort claimants with no access to insurance proceeds from some insurers and no entity providing overreaching administration of claims for the benefit of Fraser's claimants." (*Id.*).  The sale further "will effectuate the orderly administration of asbestos-related tort claims in accordance with Fraser's plan of reorganization, including allowing claimants to pursue other insurance coverage for their claims where appropriate." (*Id.*).  The sale also "was negotiated in good faith at arms-length by sophisticated counsel." (*Id.*).

## VI.     SUMMARY OF ARGUMENT

The Bankruptcy Court had the power to both (1) allow the Debtor to sell the insurance policies free and clear of interests under Sections 363(b) and (f) and (2) issue an injunction pursuant to Section 105(a) to effectuate that sale.  Under Section 363(f)(1), property of the Debtor's estate may be sold "free and clear of any interest in such property" provided non-bankruptcy law permits such a sale.

Appellants' contribution claims are derivative of, and thus "interests" in, the Debtor's property—the insurance policies and the Debtor's rights thereunder.  The claims arise from the Debtor's right to defense and indemnity under the insurance policies.  To assert a contribution claim against another insurer, both insurers must be legally obligated to provide defense or indemnity for the same claim.  The insurer seeking contribution will be limited pursuant to the terms of the insurance policy of the insurer, against whom contribution is sought, issued to the insured.  Contribution claims are thus derivative of the insurance policies, property of the bankruptcy estate, being sold back to the Settling Insurers.  Moreover, non-bankruptcy law permits orders barring contribution claims.  Therefore, the contribution claims may be enjoined under the plain language of Section 363(f).

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

The Bankruptcy Court also had the power under Section 105(a) to impose an injunction to effectuate the "free and clear" sale. Appellants correctly point out that "Section 105 can only be relied upon in support of other Bankruptcy Code provisions." (Appellants' Br. at 17). That requirement is met here because the injunction supports and serves to "carry out" the provisions of Section 363 and provide meaning to the "free and clear" sale. The injunction here is entirely dissimilar from the discharge of nondebtor third parties, prohibited in the Ninth Circuit. In the line of cases prohibiting such a discharge, the courts found injunctions under Section 105(a) incongruous because they were not effectuating other provisions of the Bankruptcy Code and they were, in the factual circumstances addressed, directly contrary to Section 524(e), which prohibits discharges of third party nondebtors. There is no discharge here. The enjoined claims are derivative of the Debtor's rights, and the Section 105(a) injunction here works to "carry out" the provisions of Section 363. In fact, many courts have issued injunctions to provide added protection to Section 363 sales.

In addition to having the power to enjoin the derivative claims, the Bankruptcy Court had subject matter jurisdiction over them. The very heart of Bankruptcy Court jurisdiction has historically been the administration of assets of the estate. The historical bankruptcy model relied upon the liquidation of estate assets to produce funds to repay claims to the extent possible. So, management of the assets of the estate, and any and all liens, claims, or encumbrances that could impact those assets, is without question within the Bankruptcy Court's subject matter jurisdiction. The Court had "core" jurisdiction over the claims. But even if it did not have "core" jurisdiction, it at the very least had "related to" jurisdiction.

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1   Last, the Bankruptcy Court's finding that the sale was in good faith and had a

2   legitimate business justification was not clearly erroneous.

### VII.   ARGUMENT

**A.   The Bankruptcy Court Properly Found It Had the Power to Allow the Debtor to Sell the Policies "Free and Clear" of Interests Under Section 363 and Enjoin Appellants' Derivative Claims to Effectuate That Sale**

The Bankruptcy Court properly found it had the power to sell the insurance policies "free and clear" of interests pursuant to Section 363.  Sections 363(b) and (f) explicitly authorize such sales of estate assets "free and clear" of interests.  Appellants attempt to evade that source of power by suggesting that the Bankruptcy Court relied solely on Section 105, but that contention is inconsistent with the order and the Bankruptcy Code as well as the basic substance of the settlement.  The settlement did not just bar claims by the non-settling insurers.  Instead, the primary purpose of the transaction was the sale of the policy rights back to the Settling Insurers.  That is the primary consideration that the Settling Insurers received and the reason they agreed to pay substantial amounts to the Debtor's estate.  The Bankruptcy Court approved the sale on a "free and clear" basis as it was authorized to do by Section 363 and it relied upon Section 105 only for authority to issue an injunction that simply effectuated the "free and clear" language of the sale transaction as explicitly authorized by Section 363(f).

**1.   Section 363 Authorizes the Sale of Assets Including Insurance Policies "Free and Clear" of "Interests"**

Section 363(f) vests the Bankruptcy Court with the power to approve a sale of insurance policies "free and clear" of any interests.  More specifically, Sections 363(b) and (f) permit a debtor-in-possession to sell "property of the estate" "free and clear of any interest

in such property of an entity other than the estate" if any one of five requirements in Sections 363(f)(1)–(5) is met.   At a minimum, the Debtor satisfies the requirements of Section 363(f)(1), permitting the property to be sold "free and clear of any interest" because "applicable nonbankruptcy law permits sale of such property free and clear of such interest."[5]

**a)      The enjoined claims are "interests" in the policies and thus may be sold "free and clear" under Section 363**

Pursuant to Section 363(f), the Debtor's property—the insurance policies and the rights of the Debtor under those policies—may be sold "free and clear of any interest." Appellants' contribution and breach of contract claims are "interests" in the Debtor's property, such that the Debtor may sell the policies pursuant to Section 363(f) "free and clear" of those claims.

The enjoined claims are "interests" in the insurance policies.  "[C]ontribution allows an insurer to recover from another insurer where both are independently obligated to indemnify or defend the same loss."  *Axis Surplus Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 947 F. Supp. 2d 1129, 1137 (W.D. Wash. 2013) (quoting *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 191 P.3d 866, 872 (Wash. 2008) (en banc)).  For an insurer to have a contribution claim against another insurer, the insurer from whom contribution is sought must have "a *legal obligation* . . . to provide [a] defense [or] indemnity coverage for the . . . claim."  *Mut. of Enumclaw Ins. Co.*, 191 P.3d at 872 (citation omitted).  That is, before a contribution claim arises, the insurer must have a legal obligation to the insured.  *Id.*

---

[5] The Debtor contended below and continues to assert that the sale was also in accordance with Section 363(f)(4), permitting the sale "free and clear of any interest" if "such interest is in bona fide dispute," and with Section 363(f)(5), permitting the sale "free and clear of any interest," if "such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest."  The Bankruptcy Court relied on Section 363(f)(5), in addition to Section 363(f)(1), in approving the sale.  (Dec. Mem., Dkt. #284 at p. 2072).



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

at 872–73 ("Equity provides no right for an insurer to seek contribution from another insurer who has no obligation to the insured.").   Therefore, when contribution claims arise, the insurer seeking contribution in effect exercises the Debtor's rights under the insurance policies to distribute an obligation shared by several insurers.   Without the Debtor's purchase and maintenance of the insurance policies issued by the Settling Insurers, Appellants could have no contribution claim against the Settling Insurers.   The contribution claims are subject to all limitations on the insured's rights, and payment by an insurer pursuant to a contribution claim would erode policy limits.   Thus, Appellants' contribution claims against the Settling Insurers are completely derivative of the Debtor's rights under its policies and are "interests" in the Debtor's property.   *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 92–93 (2d Cir. 1988) (explaining a derivative claim seeks "to collect out of the proceeds of [the debtor's] insurance policies").

Appellants allege that they have breach of contract claims arising from the Settlement Agreements and the sale of the insurance policies because "the Settling Insurers will no longer accept the equitable allocation of expenditures for defense and indemnity of asbestos-related claims" under the CSA.   (Appellants' Br. at 11).   Appellants, however, offered no proof of what the Settling Insurers will actually do or not do with respect to the CSA. Appellants merely speculate about what they fear.   But, more importantly, Appellants misconstrue the nature of the CSA.   The CSA is an interim funding agreement providing for initial allocation to facilitate prompt payment of third parties.   The parties, under the CSA, are entitled to reallocate costs later so that every insurer pays in accordance with its obligations under the policies and applicable law.   As noted above, at least one insurer has previously tried to reallocate costs initially paid under the CSA, and the CSA expressly

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

preserves this right to other insurers.  Thus, ultimately, the CSA leaves the insurers with the obligations they have under their policies and the contribution claims they have under applicable law.  It creates no independent right to any permanent contribution that does not exist absent the CSA.  The claims that are left are the same contribution claims, wholly dependent on and derivative of the Debtor's property, as discussed above.

Appellants also assert that the enjoined claims are not "property of the estate." (Appellants' Br. at 23).  Under Section 363(f), however, the enjoined claims need only be "interests" in property of the estate.  The property being sold, the Debtor's insurance policies, must be "property of the estate" under the statute.  Appellants do not contest that the insurance policies themselves are property of the bankruptcy estate.  Appellants' Br. at 23; *see, e.g.*, *Minoco Grp. of Cos., Ltd. v. First State Underwriters Agency of New England Reinsurance Corp.*, 799 F.2d 517, 519 (9th Cir. 1986) ("insurance contracts have been said to be embraced in th[e] statutory definition of 'property'" to conclude that insurance policies that insure the debtor against claims by officers and directors is property of the estate (citations omitted)).  The Debtor's rights to defense and indemnity under the policies are also property of the estate.

b)      **The sale was proper under Section 363(f)(1) because non-bankruptcy law permits the barring of contribution claims**

The sale of the insurance policies "free and clear" of contribution claims is permissible under non-bankruptcy law.  The court has "inherent equitable power to enter an order precluding subsequent claims for contribution . . . by non-settling parties." *King Cnty. v. Travelers Indem. Co.*, No. 14-CV-1957 BJR, 2018 WL 1792189, at *2 (W.D. Wash. Apr. 16, 2018) (alteration in original) (quoting *Bank of Am. v. Travelers Indem. Co.*, No. C07-

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

0322-RSL, 2009 WL 529227, at *1 (W.D. Wash. Mar. 2, 2009)).   "Washington

courts . . . recognize contribution bar orders as 'consistent with the public policy in

Washington of encouraging settlement'" and further recognize that contribution bar orders

"can be [] essential to multi-party litigation."  *Canal Indem. Co. v. Global Dev., LLC*, No. 2–

14–CV–00823–RSM, 2015 WL 347753, at *3 (W.D. Wash. Jan. 26, 2015) (quoting *Puget

Sound Energy v. Certain Underwriters at Lloyd's*, 138 P.3d 1068, 1079 (Wash. Ct. App.

2006)).  The court may enter such an order when "(1) the proposed settlement is reasonable;

and (2) the interests of non-settling defendants are protected."  *Id.*   The reasonableness

requirement "is not a high hurdle" and "the Court 'must simply ensure that the settlement is

not patently collusive or inadequate.'"  *Id.* (quoting *Bank of Am.*, 2009 WL 529227, at *1).

For example, in *King County*, the District Court approved the sale of insurance

policies back to two of the county's insurers pursuant to settlement agreements and issued an

order barring contribution claims.  *King Cnty.*, 2018 WL 1792189, at *3.  The court found

the proposed settlement was reasonable and that the interests of the non-settling defendants

were protected.   In concluding that the interests of the non-settling defendants were

protected, the Court pointed to an agreement whereby King County agreed to a setoff to

prevent double recovery and highlighted that the settlement agreement between King County

and one of the insurers had a judgment reduction provision.  *Id.* at *3, n.1.

The Settlement Agreements here meet the requirements under non-bankruptcy law to

bar any contribution claims.  The proposed settlement was reasonable, as discussed in more

detail in Section VII.C.  And, as the Bankruptcy Court found, the "non-settling insurers'

interests are adequately protected."   They are protected by the Settlement Agreements'

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

judgment reduction provisions[6] and the creation of the Liquidating Trust.  The judgment reduction clauses provide that the judgment a claimant may receive for an asbestos-related injury shall be reduced by the amount of contribution claims that Appellants would, absent the injunction, have been able to recover from the Settling Insurers.  Appellants also receive protection in that the Liquidating Trust will directly handle certain historically settled asbestos-related claims and substantially underinsured claims without tendering those claims to Appellants, alleviating Appellants' cost and risk of defense and indemnity obligations associated with these claims.

Therefore, because Appellants' contribution claims are derivative of the Debtor's rights to defense and indemnity under its policies and are "interests" in the Debtor's property (the policies), and because non-bankruptcy law permits orders barring contribution claims in connection with the sale of insurance policies to settling insurers, the Bankruptcy Court properly exercised its power to sell the policies "free and clear" of these "interests" under Section 363(f).

---

[6] Paragraph 6.8 of the Settlement Agreements (the "judgment reduction clause") states:

> The Parties agree that any plan proposed in the Bankruptcy Case shall not bar any holder of an Asbestos-Related Claim from pursuing any such Claim against any of the debtor, the reorganized debtor, or any Non-Settled Insurer.  However, the plan shall provide any judgment on any Claim against one or more Non-Settled Insurers shall be reduced by the adjudicated amount of any Contribution Claim such Non-Settled Insurer would have been able to successfully assert against the Insurers.  The purpose of this provision is to ensure that the Insurers pay their respective portions of the Settlement Amount and no more on account of Asbestos-Related Claims or Contribution Claims.

(Settlement Agreement and Release, Dkt. #62-1 at p. 330–31).

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1

2

  **2.** **The Bankruptcy Court Properly Effectuated the "Free and Clear" Sale by Enjoining, Under Section 105(a), the Claims Barred Under Section 363**

3

4

   The absence of a limited injunction would defeat the meaning of the sale free and

5

clear.  The limited injunction entered by the Bankruptcy Court acts to enjoin claims no longer

6

permitted once a sale "free and clear" of interests in the property has occurred.  It provides

7

teeth to the sale and acts to prevent litigation against the buyer of the assets by persons who

8

previously had claims.

9

   **a)** **The Bankruptcy Court had the power to issue an injunction under Section 105(a) to effectuate the Section 363 sale**

10

11

   Section 105(a) provides the Bankruptcy Court with the power to "issue any order,

12

process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."

13

The Court properly issued the limited injunction pursuant to Section 105(a) to "carry out the

14

provisions" of Section 363(f).

15

   Courts have recognized that "more explicit protection is often needed to effectuate

16

[the free and clear] aspect of a § 363 sale."  *In re Dow Corning Corp.*, 198 B.R. 214, 245

17

(Bankr. E.D. Mich. 1996) (citing cases); *see also In re Sunland, Inc.*, No. 13-13301-tr7, 2014

18

WL 7011747, at *5 (Bankr. D.N.M. Dec. 11, 2014) (explaining that "[n]otwithstanding th[e]

19

authority [of the courts to sell property free and clear of interests pursuant to Section 363],

20

courts have often found it necessary to provide 'more explicit protection'" (quoting *In re*

21

*Dow Corning Corp.*, 198 B.R. at 245)).  Limited injunctions under Section 105 provide this

22

protection and thus "are relatively common with § 363 sale orders."  *In re Sunland, Inc.*,

23

2014 WL 7011747, at *5; *see also In re Roman Catholic Bishop of Stockton*, No. 14-20371,

24

2017 WL 118013, at *9 (Bankr. E.D. Cal. Jan. 10, 2017) (confirming plan of reorganization

25

26

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

that included injunction under Section 105(a) to effectuate free and clear sale under Section 363); *In re Plant Insulation Co.*, No. 09-31347, 2014 WL 3881427, at *3 (Bankr. N.D. Cal. June 27, 2014) (order approving settlement that included injunction under Section 105(a) to effectuate sale of insurance policies under Section 363).

More specific to this case, courts, including courts in the Ninth Circuit, have approved the use of injunctions in the context of the sale of insurance policies pursuant to Section 363. *See, e.g.*, *In re Roman Catholic Bishop of Stockton*, 2017 WL 118013, at *8 (confirming a plan of reorganization that included sale of insurance policies free and clear of tort claimants' interests); *In re Dow Corning Corp.*, 198 B.R. at 247 (noting the court's power to enter order enjoining lawsuits against debtor's insurers as component of insurance buy-back settlement related to debtor's potential mass tort liability). This is especially the case in asbestos-related bankruptcies. *In re United Gilsonite Labs.*, No. 5:11-bk-02032-RNO, 2014 WL 7778849, at *5 (Bankr. M.D. Pa. Dec. 8, 2014) (approving settlement agreement wherein insurance policies were sold free and clear of interests and issuing injunction pursuant to Section 105(a) enjoining contribution claims); *In re Thorpe Insulation Co.*, No. 07-19271 (Bankr. C.D. Cal. Nov. 25, 2008) (approving settlement involving buy-back of insurance policies pursuant to section 363 of Bankruptcy Code), *appeal dismissed*, 2010 WL 3199821 (9th Cir. Mar. 5, 2010);[7] *In re Burns & Roe Enters., Inc.*, No. 00-41610RG (Bankr. D.N.J. Feb. 17, 2005), ECF. No. 1200.[8]

The limited injunction entered by the Bankruptcy Court here pursuant to Section 105 of the Bankruptcy Code is entirely consistent with the provisions of Section 105(a); it

---

[7] (Declaration of Katrina Self, Dkt. #63 at p. 425).
[8] (Declaration of Katrina Self, Dkt. #63 at p. 433).

APPELLEE'S BRIEF – 18
Case No. 3:18-cv-05637-RBL





1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

"compliments and carries out . . . an explicit provision of the Bankruptcy Code."   *In re Sunland, Inc.*, 2014 WL 7011747, at *6.[9]

        **b)**        **The limited injunctions here are distinguishable from nondebtor third-party releases, prohibited by Ninth Circuit precedent**

Appellants argue that the Ninth Circuit's decisions in *In re Lowenschuss*, 67 F.3d 1394 (9th Cir. 1995), and *In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir. 1989), wherein the court held that Section 105(a) does not permit the "discharge of the liabilities of nondebtors," prohibit enjoining Appellants' derivative claims.   Analysis of those cases establishes that Appellants' argument lacks merit because those cases are distinguishable from the circumstances presented here.

In *American Hardwoods*, the Ninth Circuit was tasked with deciding whether Section 105(a) vested the court with the power to discharge the liabilities of nondebtors.  885 F.2d at 624–25.  There, the debtor sought a permanent injunction, after confirmation of a plan of reorganization under Chapter 11, of claims brought by Deutsche Credit Corporation against the Keelers, who were nondebtor guarantors of the debtor's liabilities to Deutsche.

---

[9] Appellants assert that the requirements for Section 524(g) must be met for a court to issue an injunction under Section 105(a).  This is untrue.  The plain language of Section 105(a) and the placement of the section in Chapter 1 of the Bankruptcy Code that contains "General Provisions" does not link Section 105 to plan confirmation or to any discharge circumstance. Furthermore, this sort of injunction was permitted before the creation of Section 524(g). Nothing in Section 524(g) purports to limit otherwise permitted actions by the Bankruptcy Court.  Appellants cite no case law for the proposition that Section 524(g) is the exclusive mechanism for dealing with asbestos bankruptcies.

Furthermore, channeling injunctions have been approved and upheld in bankruptcy cases that do not invoke Section 524(g) in the Ninth Circuit.  *See, e.g.*, Order Confirming Third Amended and Restated Plan of Reorganization, *In re Roman Catholic Church of Diocese of Tucson*, No. 4-04-bk-04721-JMM (Bankr. D. Ariz. Aug. 1, 2005), ECF. No. 791; Order Confirming Third Amended and Restated Joint Plan of Reorganization, *In re Roman Catholic Archbishop of Portland in Or.*, No. 04-37154-elp11 (Bankr. D. Or. Apr. 17, 2007), ECF No. 5097.

APPELLEE'S BRIEF – 19
Case No. 3:18-cv-05637-RBL

EISENHOWER
CARLSON PLLC
*Attorneys at Law*

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

*Id.*  In determining whether the court had the power to enjoin those claims, the court looked first to the language of Section 105(a), which "limits the court to ordering those injunctions 'necessary or appropriate to carry out the provisions of this title.'"  *Id.* at 625 (quoting 11 U.S.C. § 105(a)).  There, the proponents of the injunction could point to no provision of the Bankruptcy Code that authorized any discharge or release of the nondebtors.  The proponents relied exclusively on Section 105 itself as the source of the Court's authority.  The Ninth Circuit noted that "[a]lthough a bankruptcy court is essentially a court of equity, its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code."  *Id.* (quoting *Johnson v. First Nat'l Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir. 1983)).

The court then looked to the injunction being sought and considered whether "it was consistent with the provisions of the Code."  *Id.*  The court determined that the permanent injunction being sought would in effect be a discharge of the Keelers' liability, who were nondebtor guarantors of the debtor's liability.  *Id.*  This result was not authorized by any Code section other than Section 105 and was directly in conflict with Section 524(e) of the Bankruptcy Code, which states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  *Id.* (quoting 11 U.S.C. § 524(e)).  The Ninth Circuit therefore determined that "the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief sought by [the debtor]."  *Id.* at 626.

The Ninth Circuit concluded the same in *In re Lowenschuss*.  There, the court looked again to the language of Section 524(e) and prohibited, in a plan confirmation context, global

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1  releases of all claims against the debtor's children and other connected persons and entities.

2  67 F.3d at 1401.

3         *American Hardwoods* and *Lowenschuss* are, however, inapposite to the situation here.

4  Section 524(e) has no bearing on the order entered here which does not relate to any debtor

5  discharge.  *See In re Yellowstone Mountain Club, LLC*, 460 B.R. 254, 270 (Bankr. D. Mont.

6  2011) (analyzing *American Hardwoods* and *Lowenschuss* and explaining that the cases were

7  "inapplicable" to an exculpation clause before the court because the exculpation clause was

8  "not a broad sweeping provision that seeks to discharge or release nondebtors from any and

9  all claims that belong to others").  Indeed, in this case, it is virtually certain that the Debtor

10  will never receive any discharge.  The question here is whether the Bankruptcy Court's

11  injunction under Section 105(a) is "consistent with" a Section 363(f) sale "free and clear" of

12  interests.  Here, there is specific Code authority authorizing a release of exactly the types of

13  claims that are barred.  Such a pairing is not only "consistent with" but is "common in

14  connection with" such a sale.  The claims enjoined here are not unconnected liabilities of

15  nondebtors.  As discussed above in Section VII.A.1.a., Appellants' claims are derivative of

16  the rights of the Debtor and are claims against property of the estate.[10]  *See Johns-Manville*

---

[10] Appellants rely on language in *In re Madison Assocs.*, 183 B.R. 206 (Bankr. C.D. Cal. 1995), for the proposition that "[e]ven if another Circuit might have permitted an injunction," "the Ninth Circuit prohibits it." (Appellants' Br. at 20).  In *Madison Assocs.*, the court determined that a "request for class certification pursuant to Rule 23 is not subject to the same legal constraints as the request for permanent injunctive relief under § 105(a), even if the consequences of class certification include settlement agreements that include third party releases." *Id.* at 213.  The court ultimately found that "class certification pursuant to Rule 23 is *not* precluded by the Ninth Circuit's rulings in . . . *American Hardwoods*." *Id.*  The language to which Appellants point is part of a discussion regarding a past ruling by the court in the same case denying a Section 105 motion "enjoining all creditors of the Debtor from bringing actions against the Settling Partners." *Id.*  The Settling Partners sought a release from any liability relating to any partnership debt or interest. *Id.* at 210.  There is no

EISENHOWER
CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1  *Corp.*, 837 F.2d 89 at 92–93 (defining a derivative claim as one where "third parties seek to

2  collect out of the proceeds of [the debtor's] insurance policies on the basis of [the debtor's]

3  conduct").

### B.    The Bankruptcy Court Had Subject Matter Jurisdiction to Enjoin the Claims

6  Appellants concede that the Bankruptcy Court had jurisdiction to approve the sale of

7  the insurance policies pursuant to Section 363 but contend that the Court erred when it found

8  it had subject matter jurisdiction over Appellants' contribution claims.  The Bankruptcy

9  Court had "core" subject matter jurisdiction over Appellants' derivative claims; even if the

10  Bankruptcy Court lacked "core" jurisdiction, it had at a minimum, "related to" jurisdiction

11  over the claims.

13  28 U.S.C. § 1334(b) grants a bankruptcy court "jurisdiction of all civil proceedings

14  *arising under* title 11, or *arising in* or *related to* cases under title 11."  *See In re Wilshire*

15  *Courtyard*, 729 F.3d 1279, 1283 (9th Cir. 2013); *see* also 28 U.S.C. § 157(b)(1)

16  ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings

17  arising under title 11, or arising in a case under title 11 . . . .").

19  The Bankruptcy Court properly found that it had "core" jurisdiction over the sale of

20  the insurance policies, "including the injunction preventing the non-settling insurers from

21  bringing contribution and indemnity claims."  (Mem. Dec., Dkt. #284 at p. 2069).  Under

22  Section 157(b)(2), "core proceedings" includes, *inter alia*, "matters concerning the

23  administration of the estate," "orders approving the sale of property," and "other proceedings

24  affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor"

26  mention in the case of any Section 363(f) sale "free and clear," and the claims being enjoined here are derivative rights of the Debtor.



EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

relationship.  28 U.S.C. §§ 157(b)(2)(A), (N), and (O).  The sale of the insurance policies, and the limited injunction, clearly fall under these "core" proceedings.  In fact, courts have previously exercised their "core" jurisdiction in selling insurance policies under Section 363 and issuing injunctions under Section 105.  *See, e.g.*, *In re Roman Catholic Bishop of Stockton*, 2017 WL 118013, at *1.

At a minimum, the Bankruptcy Court had jurisdiction "related to" title 11 to enjoin Appellants' contribution and breach of contract claims.  The "related to" jurisdiction test is whether "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*."'  *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (emphasis in original) (quoting *In re Fietz*, 852 F.2d 455, 457 (9th Cir. 1988)).  Any action in state court attempting to enforce contribution claims would have an effect on the estate.  Moreover, even in *American Hardwoods*, the Ninth Circuit concluded there was subject matter jurisdiction over Deutsche's claims.  The Ninth Circuit concluded, after employing the "could conceivably have any effect" on the administration of the bankruptcy estate test, that "there [wa]s an undeniable relationship between the administration of the bankruptcy estate and the outcome of the motion for a permanent injunction" and that the "enforcement of the judgment . . . 'could conceivably' affect the administration" of the reorganization plan.  885 F.2d at 624 (citation omitted) (explaining that "[s]ubject matter jurisdiction and power are separate prerequisites to the court's capacity to act").

## C.      The Sale was in Good Faith and Had a Valid Business Justification

The sale of the insurance policies pursuant to the Settlement Agreements was proposed in good faith and had a valid business justification.  The term good faith "encompasses fair value, and further speaks to the integrity of the transaction."  *In re 240 N.*

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA  98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

*Brand Partners, Ltd.*, 200 B.R. 653, 659 (B.A.P. 9th Cir. 1996) (quoting *In re Wilde Horse Enters, Inc.*, 136 B.R. 830, 842 (Bankr. C.D. Cal. 1991)).   "Absence of good faith is 'typically shown by fraud, collusion between the purchaser and other bidders or the trustee . . . .'"   *In re Berkeley Delaware Court, LLC*, 834 F.3d 1036, 1041 (9th Cir. 2016) (quoting *In re Filtercorp, Inc.*, 163 F.3d 570, 577 (9th Cir. 1998)).   Whether the Bankruptcy Court erred in determining that the sale had a legitimate business justification and was negotiated in good faith is a factual determination reviewable only for clear error.   *See Ratanasen*, 11 F.3d at 1469.

The Bankruptcy Court found that the sale was in good faith and had a valid business justification.   The Court noted, that the Debtor had been "involved in a long-running series of disputes with [PWIC] regarding PWIC's claim that its policies were exhausted in approximately 2010," and that the "sale resolve[d] several insurance coverage disputes that risk[ed] leaving the asbestos-related tort claimants with no access to insurance proceeds from some insurers and no entity providing overreaching administration of claims for the benefit of Fraser's claimants."   (Dec. Mem., Dkt. #284 at p. 2067, 2072).   The sale would further "effectuate the orderly administration of asbestos-related tort claims in accordance with Fraser's plan of reorganization, including allowing claimants to pursue other insurance coverage for their claims where appropriate."   (*Id.* at 2072).   The sale also "was negotiated in good faith at arms-length by sophisticated counsel."   (*Id.*).

Appellants do not point to any evidence in the record to upset the Court's findings and failed to pursue any discovery regarding the approval of the Settlement Agreements.   Additionally, Appellants' claims that there was insufficient discovery is unavailing because

EISENHOWER CARLSON PLLC
Attorneys at Law

1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

1

2

Appellants were involved in the receivership proceedings wherein there was ample discovery opportunity.

3

## VIII.    CONCLUSION

4

5

6

7

8

9

10

11

12

13

14

The Bankruptcy Court's approval of the Settlement Agreements, and the sale of the insurance policies thereunder "free and clear" of Appellants "interests" in the property, was fully authorized under Section 363(f) of the Bankruptcy Code.  To "carry out" the sale and ensure it was truly "free and clear," the Bankruptcy Court properly imposed a limited, protective injunction under Section 105(a).  Appellants insinuate that this sale is atypical, but that is not the case.  The sale is a typical Section 363 sale paired, as is commonly done, with an injunction under Section 105(a).  Section 524(g) has no bearing here.  Further the sale was in good faith, and the proceeds of the sale will create the bulk of a liquidating trust for individuals with asbestos-related diseases.

15

16

WHEREFORE, Appellee respectfully requests that the Court affirm the orders entered by the Bankruptcy Court.

17

## IX.    CERTIFICATE OF COMPLIANCE

18

19

This brief complies with the type-volume limitation of Rule 8015(a)(7)(B) because this brief contains 8,848 words.

20

21

DATED this 20th day of November, 2018.

22

EISENHOWER CARLSON PLLC

23

24

By: /s/ Darren R. Krattli
    Darren R. Krattli, WSBA #39128
    Katrina F. Self, WSBA #52359
    *Attorneys for Debtor*

By: /s/ Craig J. Litherland
    Craig J. Litherland, Admitted *Pro Hac Vice*
    *Attorney for Debtor*

25

26

By: /s/ Daniel I. Wolf
    Daniel I. Wolf, Admitted *Pro Hac Vice*
    *Attorney for Debtor*

APPELLEE'S BRIEF – 25
Case No. 3:18-cv-05637-RBL



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

**CERTIFICATE OF SERVICE**

Jennifer Fernando declares and states as follows:

I am a legal assistant at the law firm of Eisenhower Carlson PLLC, am over the age of 18, and otherwise competent to testify.

On November 20, 2018, a true and correct copy of the forgoing was sent via ECF notification to the following parties:

Bankruptcy Appeals (TAC)    ECFHelp_Tacoma@wawb.uscourts.gov

Aron M. Oliner    roliner@duanemorris.com, dmicros@duanemorris.com

Barbara J Brady    bbrady@karrtuttle.com, ksagawinia@karrtuttle.com

Charles R Ekberg    ekbergc@lanepowell.com, docketing-sea@lanepowell.com, intlekofert@lanepowell.com

Craig J Litherland    litherlandc@gotofirm.com

Danial D Pharris    pharris@lasher.com, ullom@lasher.com

Daniel L Syhre    dsyhre@bpmlaw.com, dmarsh@bpmlaw.com

Darren R. Krattli    dkrattli@eisenhowerlaw.com, jfernando@eisenhowerlaw.com

Diana Kay Carey    dcarey@karrtuttle.com, mhernandez@karrtuttle.com, mmunhall@karrtuttle.com

Dominica C. Anderson    dcanderson@duanemorris.com, frbonilla@duanemorris.com

Filiberto Agusti    fagusti@steptoe.com

Frank Winston , Jr    fwinston@steptoe.com

Jacob Cohn    jcohn@gordonrees.com, tdonahue@gordonrees.com

James P. Ruggeri    jruggeri@goodwin.com

Jessica Bohl    jabohl@duanemorris.com, AutoDocketSFO@duanemorris.com, jysoliman@duanemorris.com

Joshua Taylor    jrtaylor@steptoe.com

APPELLEE'S BRIEF – 26
Case No. 3:18-cv-05637-RBL



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com

Joshua D Weinberg      jweinberg@goodwin.com

Katrina F Self      kself@eisenhowerlaw.com, crochelle@eisenhowerlaw.com

Kevin P Hanchett      hanchett@lasher.com, cross@lasher.com

Lauren Ashley Dorsett      laurendorsett@dwt.com, elainehuckabee@dwt.com, seadocket@dwt.com

Mark D Plevin      mplevin@crowell.com

Mark D Waldron      mark@mwaldronlaw.com, diana@mwaldronlaw.com

Michael M. Feinberg      mfeinberg@karrtuttle.com, mmunhall@karrtuttle.com, rmoreau@karrtuttle.com

Michael M. Sperry      michaels@schweetlaw.com

Nancy Anne Brownstein      nancybrownstein@dwt.com, christinekruger@dwt.com, seadocket@dwt.com

Philip R Matthews      prmatthews@duanemorris.com, vcdomantay@duanemorris.com

Russell W. Roten      rwroten@duanemorris.com, dmartinez@duanemorris.com

Sarah N Turner      sturner@grsm.com, cjacobs@grsm.com, kahansen@grsm.com

Sarah Rose Flynn      sarah.flynn@usdoj.gov

Steven Soha      courtnotices@sohalang.com, low@sohalang.com, soha@sohalang.com

Thomas Scott Linde      tomlinde@schweetlaw.com, Karenl@schweetlaw.com, maureenf@schweetlaw.com

*And all other parties requesting ECF Notification.*

I declare under the penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

DATED at Tacoma, Washington this 20th day of November 2018.

*/s/ Jennifer Fernando*_____
Jennifer Fernando, Legal Assistant

APPELLEE'S BRIEF – 27
Case No. 3:18-cv-05637-RBL



1201 Pacific Ave., Ste. 1200
Tacoma, WA 98402
Tel 253.572.4500
Fax 253.272.5732
www.eisenhowerlaw.com