UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| In re:<br><br>FRASER'S BOILER SERVICE, INC.<br><br>Debtor, | APPEAL NO. 18-T007<br>APPEAL NO. 18-T008<br><br>(CONSOLIDATED)<br><br>CASE NO. 3:18-CV-05638 BHS<br>CASE NO. 3:18-CV-05637-RBL<br>(LEAD CASE)<br><br>ORDER |

## INTRODUCTION

THIS MATTER is before the Court on appeal from the Bankruptcy Court. Appellee Fraser's Boiler Service, Inc., ("FBS") used to manufacture industrial boilers but now exists for the sole purpose of paying out asbestos claims. In 2018, FBS reached a Settlement Agreement with several of its insurers ("Settling Insurers") to sell back their policies for approximately $11.66 million. Per the agreement, FBS entered bankruptcy to effectuate a sale free and clear of claims related to the Repurchased Policies, as well as to enjoin such claims. FBS's remaining insurers ("Non-Settling Insurers") objected to this plan. They argued that the Bankruptcy Court lacked jurisdiction and authority to release and enjoin their claims against the Settling Insurers. Those claims ("Inter-Insurer Claims") include equitable contribution and breach of contract

claims based on the Cost Sharing Agreement ("CSA") between FBS's various insurers.[1] After the Bankruptcy Court approved the Settlement Agreement and sale and enjoined the Inter-Insurer Claims, the Non-Settling Insurers filed this appeal.[2]

On appeal, the Non-Settling Insurers attack the Bankruptcy Court's Order on several fronts. First, they argue that the Bankruptcy Court lacked jurisdiction to issue the Order because the Inter-Insurer Claims are entirely separate from the FBS bankruptcy estate. Second, the Non-Settling Insurers assert that bankruptcy courts cannot enjoin third-party claims under 11 U.S.C. § 105(a) when the requirements of § 524(g) are not satisfied. Third, the Non-Settling Insurers contend that the Bankruptcy Court erred by approving the sale under 11 U.S.C. § 363(f), which does not apply because the Inter-Insurer Claims are not an "interest" in FBS's property. Alternatively, if the claims are an "interest," § 363(f)(1) was not satisfied because non-bankruptcy law does not permit the sale. Finally, the Non-Settling Insurers argue that the Bankruptcy Court improperly found that the sale was in good faith.

For the reasons described below, the Court GRANTS the Non-Settling Insurers' Appeal and REVERSES the Bankruptcy Court's order.

**DISCUSSION**

**1. Standard of Review**

District courts apply the same standard of review as an appellate court would when considering a case appealed from the bankruptcy court. *In re Parvin*, 549 B.R. 268, 271 (W.D. Wash. 2016) (citing *In re Baroff*, 105 F.3d 439, 441 (9th Cir.1997)). Factual determinations are

---

[1] This agreement, which apportions defense cost and indemnity shares, was renewed in August, 2017, for an additional two-year term ending in August, 2019. The CSA was set to automatically renew in August, 2019, unless one of the parties objected.

[2] For a full recitation of the facts, see the Bankruptcy Court's Memorandum Decision on Motion to Approve Settlement Agreement with Certain Insurers. Dkt. #1, at 3-5.

reviewed for clear error, while legal conclusions and mixed questions of law and fact are reviewed de novo. *Id.* (citing *In re Retz*, 606 F.3d 1189, 1196 (9th Cir.2010)); *Ratanasen v. State of Cal., Dep't of Health Servs.*, 11 F.3d 1467, 1469 (9th Cir. 1993).

**2.     The Bankruptcy Court's Jurisdiction to Approve the Sale and Issue the Injunction**

The Non-Settling Insurers argue that the Bankruptcy Court lacked both "core" and "non-core" jurisdiction to enjoin the Inter-Insurer Claims. Core jurisdiction was lacking, they argue, because the Inter-Insurer Claims could arise outside of bankruptcy and therefore do not invoke any substantive rights under title 11. They also contend that non-core jurisdiction was absent because resolution of the Inter-Insurer Claims has no effect on FBS's rights, liabilities, options, or freedom of action, and thus does not affect the administration of the estate.

FBS responds that the Bankruptcy Court properly invoked its core jurisdiction in approving the sale of the Repurchased Policies and issuing the injunction. In the alternative, FBS argues that there is non-core jurisdiction because there is an "undeniable relationship between the administration of the bankruptcy estate and the outcome of the motion for a permanent injunction" and that "enforcement of the injunction . . . could conceivably affect the administration" of the reorganization plan. Dkt. #29, at 23 (quoting *In re Am. Hardwoods, Inc.*, 885 F.2d 621, 624 (9th Cir. 1989) (internal quotation marks omitted)).

"Two statutes, 28 U.S.C. §§ 157(a) and 1334, allow district courts to refer proceedings arising in, arising under, or related to the Bankruptcy Code, to bankruptcy courts." *In re Ray*, 624 F.3d 1124, 1130 (9th Cir. 2010). However, bankruptcy courts' jurisdiction is further divided into "core" proceedings that arise in or under the Bankruptcy Code and "non-core" proceedings that are merely related to the Bankruptcy Code. *Dunmore v. United States*, 358 F.3d 1107, 1114 (9th Cir. 2004) (citing 28 U.S.C. § 157). Bankruptcy courts may only issue final judgments in core

proceedings, while in non-core proceedings "the bankruptcy court is limited to hearing the matter and submitting proposed findings of fact and conclusions of law to the district court." *Id*.

A cause of action is core and "aris[es] under" the Bankruptcy Code if it is "created or determined by a statutory provision of title 11," while "arising in" refers to proceedings that are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995) (quoting *Eastport Assocs. v. City of Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1076-77 (9th Cir.1991)). Section 157(b)(2) contains a non-exhaustive list of core proceedings, including "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate or exemptions from property of the estate," and "other proceedings affecting the liquidation of assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship . . . ." § 157(b)(2)(A), (B), & (O). However "bankruptcy courts should read narrowly the § 157(b)(2)(O) 'catch-all provision' to avoid potential constitutional problems arising from having Article I judges issue final orders in cases requiring an Article III judge, without a party's consent." *Dunmore*, 358 F.3d at 1115.

On the other hand, a proceeding falls under non-core jurisdiction if it "could exist outside of bankruptcy" but is "related to the bankruptcy because of its potential effect." *Id*. (quoting *Eastport Assocs.*, 935 F.2d at 1076-77). The Ninth Circuit has explained that the test is whether "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005).

Here, whether the Bankruptcy Court had core, non-core, or no jurisdiction depends partly on how the relevant "proceedings" are defined. The Non-Settling Insurers describe the proceedings as the Inter-Insurer Claims themselves, while FBS refers to "[t]he sale of the

insurance policies . . . and the limited injunction." Dkt. #28, at 13; Dkt. #29, at 23. However, in *American Hardwoods*, the Ninth Circuit clearly viewed the "proceedings" as the claims themselves, despite the fact that they were addressed within the context of a motion for injunctive relief and not directly asserted by the claim holder within the bankruptcy proceedings. *See* 885 F.2d at 623. The situation in this case is similar because FBS seeks to enjoin future litigation against the Settling Insurers, making the question whether that litigation falls within the Bankruptcy Court's jurisdiction.

In light of this, it was not within the Bankruptcy Court's core jurisdiction to approve the sale and enjoin the Inter-Insurer Claims. As the Non-Settling Insurers point out, these types of claims are regularly brought outside of bankruptcy court and therefore do not arise in or under the Bankruptcy Code. In addition, allowing a bankruptcy court to enjoin third-party, non-bankruptcy claims without Article III approval would create the kind of constitutional problem that *Dunmore* warned against. *See* 358 F.3d at 1115.

However, the Bankruptcy Court did have non-core jurisdiction. Like *American Hardwoods*, where there was a risk that any judgment obtained by litigating the third-party claims would indirectly impact the reorganization plan, here there is a risk that the Inter-Insurer Claims would effectively cause the Settling Insurers to continue paying for policies they had already re-purchased. *See* 885 F.2d at 624. Although in theory this would not impact a free and clear sale that had already taken place, in reality the potential for such a scenario would prevent a sale from ever happening. There is therefore an "undeniable relationship" between the Inter-Insurer Claims and FBS's ability to sell back its policies, which was the entire reason FBS entered bankruptcy in the first place. *See id.* Consequently, while the Bankruptcy Court did not have the ability to issue a final judgment, it did have jurisdiction over the sale and injunction.

### 3. The Bankruptcy Court's Power to Issue the Injunction under § 105(a)

To give effect to the sale free and clear of the Inter-Insurer Claims, the Bankruptcy Court issued a permanent injunction pursuant to its equitable power under 11. U.S.C. § 105(a). Dkt. #1, at 12. However, the Non-Settling Insurers argue that Ninth Circuit precedent prohibits a bankruptcy court from enjoining claims between third parties. The Non-Settling Insurers also contend that, even if it is permissible to enjoin "derivative" third-party claims, their claims for equitable contribution and breach of contract against the Settling Insurers were not derivative of the Repurchased Policies. FBS responds that the Ninth Circuit's rule prohibiting third-party injunctions does not apply to injunctions that are narrow in scope and apply only to derivative claims.

Although § 105(a) provides that a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," this authority may be limited by "more specific law." *In re Golden Plan of California, Inc.*, 829 F.2d 705, 713 (9th Cir.1986). Applying this principle, *American Hardwoods* considered whether an injunction of third-party claims under § 105(a) was inconsistent with § 524(e), which provides that ". . . discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 885 F.2d at 626. The court held that "[s]ection 524(e) . . . limits the court's equitable power under section 105 to order the discharge of the liabilities of nondebtors." 885 F.2d 621, 626 (9th Cir. 1989).[3] However, in dicta, the court left the door ajar to the prospect of enjoining third-party claims in a case with "unusual facts" analogous to *In re A.H. Robins Co. (Menard–Sanford v. Mabey)*, 880 F.2d 694 (4th Cir.1989).

---

[3] *American Hardwoods* also concluded that the "semantic distinction" between discharge and a permanent injunction was unimportant. 885 F.2d at 626. "A discharge is in effect a special type of permanent injunction." *Id.* Consequently, the Court will use these terms interchangeably when appropriate.

ORDER - 6

*Id*. at 626-27. In *A.H. Robins*, the Fourth Circuit held that § 524(e) did not prohibit injunctions against third-party claims in cases where discharge is essential to an "overwhelmingly approved" reorganization plan that also gives claimants a second chance to recover. 880 F.2d at 702.

However, any door left open by *American Hardwoods* was definitively slammed shut in *In re Lowenschuss*, 67 F.3d 1394, 1402 (9th Cir. 1995). There, the Ninth Circuit held, "without exception, that § 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors" and explained that *American Hardwoods* "expressly declined to adopt the approach set forth in *A.H. Robins*." *Id*. at 1401-02. The court further stated that its position was buttressed by the recently-created § 524(g), which "provides that in asbestos cases, if a series of limited conditions are met, an injunction issued in connection with a reorganization plan may preclude litigation against third parties." *Id.* at 1402 n.6. According to the court, this subsection constituted the one "narrow exception" to the general prohibition on discharging third-party claims. *Id*. The Ninth Circuit has reiterated this position as recently as 2016. *See Deocampo v. Potts*, 836 F.3d 1134, 1143 (9th Cir. 2016) ("[W]e have 'repeatedly held, without exception,' that, in a Chapter 11 proceeding, '§ 524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors.'" (quoting *In re Lowenschuss*, 67 F.3d at 1401)); *see also In re Mariposa Rd. Self-Storage Assocs. LLC*, 693 F. App'x 486 (9th Cir. 2017) (reversing a district court order distinguishing *Lowenschuss* on the basis that the third party asserting claims was also in bankruptcy); *In re Maxitile, Inc.*, 237 F. App'x 274, 275-76 (9th Cir. 2007) (disallowing ambiguous plan that could enjoin claims against third parties).

The Ninth Circuit's unequivocal rejection of *A.H. Robins* amounts to a rejection of all exceptions to § 524(e)'s prohibition of enjoining third-party claims. This includes the "derivative" claims exception from *MacArthur Co. v. Johns-Manville Corp.* that the Bankruptcy

Court relied on here. *See* 837 F.2d 89, 92 (2d Cir. 1988). There are significant similarities between *MacArthur* and *A.H. Robins* that compel this conclusion. Both cases observed that allowing third-party claims would impede reorganization, and *A.H. Robins* even quoted *MacArthur* in support of its holding. *Id.* at 93; *A.H. Robins*, 880 F.2d at 701, 702. Most importantly, both cases involved injunctions that only applied to a subset of third-party claims. *See MacArthur*, 837 F.2d at 90 (injunction relieved insurers of all obligations related to the disputed policies); *A.H. Robins*, 880 F.2d at 700 (injunction only applied to suits related to the contraceptive device manufactured by the debtor). This means that the Ninth Circuit's interpretation of § 524(e) prohibits not just "global third-party releases" but all third-party releases. *See* Dkt. #1, at 13.

Additionally, while the Bankruptcy Court here relied on *MacArthur*'s "derivative claims" language as an exception to § 524(e), the Second Circuit only discussed derivative claims to explain why the appellant's claims were not "too remote" to allow jurisdiction. *See* Dkt. #1, at 15; *MacArthur*, 837 F.2d at 92. *MacArthur* never even mentions § 524(e), making that case an inadequate basis for deviating from the Ninth Circuit's interpretation of that subsection. In short, whatever the wisdom of allowing bankruptcy courts to enjoin third-party claims when they are "completely derivative of [the debtor's] rights," such a rule is simply incompatible with Ninth Circuit precedent. *See MacArthur*, 837 F.2d at 92.[4]

More recent bankruptcy court cases distinguishing *Lowenschuss* are not persuasive. FBS mainly relies on *In re Yellowstone Mountain Club, LLC*, where the court found that *In re Lowenschuss* did not bar an injunction that only discharged claims relating to or arising out of

---

[4] The only post-*Lowenschuss* case within the Ninth Circuit to explicitly evaluate *MacArthur*'s approach rejected the idea. *In re Madison Assocs.*, 183 B.R. 206, 213 (Bankr. C.D. Cal. 1995). In doing so, the court explained that the Ninth Circuit's holding in *American Hardwoods* was "broad enough to apply to any case involving permanent §105 injunctions against non-debtors." *Id*.

the chapter 11 proceedings. *See* 460 B.R. 254, 270-72 (Bankr. D. Mont. 2011). The Bankruptcy Court also relied on *In re Pacific Gas & Electric Co.*, 304 B.R. 395, 418 (Bankr. N.D. Cal. 2004). In that case, the court allowed a reorganization plan that released all person from causes of action "held by, ascertainable on behalf of the Debtor or derivative of the Debtor's rights." *Id*. at 404, 418 n.26.

Insofar as these cases enjoin third-party litigation, they run afoul of the broad rule established in *American Hardwoods* and *Lowenschuss*. Whether or not a third party's claim has some essential connection to the debtor's property, the claim still belongs to the third party as long as they can unilaterally choose to bring it. Consequently, allowing limited-scope injunctions of this nature is still an exception to § 524(e)'s prohibition of "discharging liabilities of non-debtors." *In re Lowenschuss*, 67 F.3d at 1401. The Ninth Circuit has stated that exceptions are not allowed.[5] *Id*.

Even if the Court were to recognize an exception allowing injunctions of derivative claims, this case would stretch that exception much further than in *Yellowstone Mountain Club*, *In re Pacific Gas*, or even *MacArthur*. The injunction at issue here is broader than in *Yellowstone Mountain Club* because there is no temporal limitation – it applies to all claims related to the Repurchased Policies. *See* Dkt. #1, at 7. It is also broader than *Pacific Gas*, which specifically noted that only claims found to "belong to the Debtor's estate" were released, while "[c]laims that may be asserted directly by third parties against nondebtors" were not. *See* 304 B.R. at 418 n.25.

---

[5] The Bankruptcy Court also distinguished this case from *Lowenschuss* on the basis that "[t]he *Lowenschuss* Court did not find that the release was essential to the reorganization plan" and "[u]nlike *Lowenschuss*, the dispute at hand involves mass torts and multiple parties and interests." Dkt. #1, at 13. To the contrary, *Lowenschuss* explicitly rejected the approach from *A.H. Robins*, which established an exception to § 504(e) precisely when the injunction was essential to the reorganization plan in a case involving mass torts. *See* 67 F.3d at 1402 (referring to 880 F.2d at 701-02). The Bankruptcy Court's basis for distinguishing *Lowenschuss* was thus flawed.

Finally, in *MacArthur*, the third party had rights as a coinsured on the debtor's policy, meaning the debtor's property directly supplied the third party's rights. 837 F.2d at 92. Here, in contrast, the Non-Settling Insurers' rights derive from equity and the CSA, an entirely separate contract between the insurers. Although the Non-Settling Insurers' rights could not have come into being without the Repurchased Policies, they also have independent sources that are not part of FBS's property. *See Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 143 Wash. App. 753, 794 (2008) ("[E]quitable contribution [claims] against jointly liable coinsurers . . . arise from the rights of the overpaying insurer, not from the rights of the insured."). Indeed, even the Second Circuit has recognized that contribution claims are not derivative of a repurchased insurance policy in the same way the coinsured's claims were in *MacArthur*. *See In re Johns-Manville Corp.*, 600 F.3d 135, 151 (2d Cir. 2010). The Non-Settling Insurers' claims are therefore not "derivative" of the Repurchased Policies.

If § 524(e) bars all injunctions against third-party claims, the Bankruptcy Court could have exercised its § 105 power to enjoin the Non-Settling Insurers only if the requirements of § 524(g) were satisfied. *See Lowenschuss*, 67 F.3d at 1402 n.6. However, the Bankruptcy Court itself recognized that "FBS does not satisfy those requirements because it is not an ongoing entity that can contribute the value of its equity to the liquidating trust." Dkt. #1, at 14. The Bankruptcy Court therefore erred by enjoining the Inter-Insurer Claims.

**4.     The Bankruptcy Court's Power to Approve the Sale under § 363(f)**

In addition the injunction under 11 U.S.C. § 105(a), the Non-Settling Insurers argue that the Bankruptcy Court lacked power under § 363(f) to order the free and clear sale of the Repurchased Policies. Section 363(f) provides, "The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the

estate, only if" one of five conditions is met. The Bankruptcy Court only invoked the first condition, which states that "applicable nonbankruptcy law permits sale of such property free and clear of such interest." § 363(f)(1).

The Non-Settling Insurers first assert that the Bankruptcy Court's order could not reach the Inter-Insurer Claims because those claims did not amount to "an interest in [FBS's] property," as required by § 363(f). Second, the Non-Settling Insurers argue that the sale did not comply with § 363(f)(1) because the authorities cited by the Bankruptcy Court are either inapplicable or only allow free and clear sales if the non-settling parties' interests are protected, which they were not here. FBS contests both of these assertions.

a. *Whether the Inter-Insurer Claims are an "Interest" in FBS's Property*

The Non-Settling Insurers contend that the Inter-Insurer Claims are not an "interest in [FBS's] property." § 363(f). They argue that the equitable contribution claims are distinct from the underlying policies and do not depend on the rights of the insured. *See Polygon*, 143 Wash. App. at 794. Similarly, the contractual claims arise from the CSA, which is a separate contract between the insurers. FBS responds that, because contribution claims presuppose a legal obligation owed by the contributing insurer to the insured, contribution claims effectively involve exercising the debtor's rights under the policies. *See Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wash. 2d 411, 418 (2008). FBS also points out that contribution claims are subject to all limitations of the insured's rights and can erode policy limits.

The term "interest in such property" in § 363(f) is not defined in the statute and courts have not settled on an interpretation. In the context of claims against the debtor themselves, there is a general view among some circuit courts that a broad reading is superior to limiting § 363(f) solely to *in rem* interests. *In re Leckie Smokeless Coal Co.* explained that the term "interest in

such property" requires a relationship between the objector's right to demand payment from the debtor and the use to which the debtor put their assets. *Leckie*, 99 F.3d at 582 (holding that obligations to several benefit plans under the Coal Act were an "interest" under § 363(f) because the debtor chose to invest his assets in the coal industry). The Third Circuit distilled *Leckie*'s reasoning and held that an "interest in such property" includes "obligations that may flow from ownership of property" or "obligations that are connected to, or arise from, the property being sold." *Folger Adam Security, Inc. v. DeMatteis/MacGregor JV*, 209 F.3d 252, 258 (3d Cir. 2000); *see also In re PBBPC, Inc.*, 484 B.R. 860, 867-69 (B.A.P. 1st Cir. 2013); *In re Trans World Airlines, Inc.*, 322 F.3d 283, 290 (3d Cir. 2003); *Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003); *Myers v. United States*, 297 B.R. 774, 780-81 (S.D. Cal. 2003).

The application of § 363(f) is murkier in cases involving claims between third parties. In *MacArthur*, the Second Circuit found that the objector's rights under the policy's vendor endorsement, though contractual in nature, were encompassed by § 363(f) because they derived from the debtor's rights under the policy.[6] 837 F.2d at 92. Other courts have disputed this conclusion and refused to allow sales of policies free and clear of contractual rights of third parties against the insurer. *See, e.g., In re SoyNut Butter Co.*, No. 17 B 14970, 2018 WL 3689549, at *4 (Bankr. N.D. Ill. Aug. 1, 2018); *In re Adelphia Commc'ns Corp.*, 364 B.R. 518, 527 (Bankr. S.D.N.Y. 2007); *In re Forty-Eight Insulations, Inc.*, 133 B.R. 973, 978 (Bankr. N.D. Ill. 1991). The courts in *SoyNut Butter* and *Forty-Eight Insulations* viewed § 363(b)'s provision that the trustee may only sell "property of the estate" as a limitation on the bankruptcy court's

---

[6] Notably, *MacArthur* did not interpret the term "interest in such property" or analyze how the objector's claims fell within its definition. The court did, however, repeatedly emphasize that the free and clear sale and injunction were "necessary" and "essential" to the reorganization. 837 F.2d at 93, 94.

power under § 363(f). 2018 WL 3689549, at *4; 133 B.R. at 978. *Forty-Eight Insulations* therefore observed that third-party claims may only be released if they involve the claimant asserting the debtor's own rights directly against the insurer, such as when a tort claimant succeeds against the debtor and can then proceed against their insurer. *See* 133 B.R. at 978. *Adelphia*, meanwhile, explained that the objectors' contractual rights under the policies created an interest in a separate portion of the proceeds to which the debtor was not entitled, even though the debtor owned the policies themselves. 364 B.R. at 525, 527. Consequently, the court found that § 363(f) did not apply. *Id*. at 528.

Here, there are two separate but equally compelling reasons that the sale free and clear of the Inter-Insurer Claims was not proper under § 363(f). First, the claims do not fit within any existing definition or application of the term "interest." Second, allowing sales free and clear of claims between third parties would be inconsistent with existing Ninth Circuit precedent regarding bankruptcy courts' power over third-party claims. *See Am. Hardwoods*, 885 F.2d at 626; *Lowenschuss*, 67 F.3d at 1402.

The Inter-Insurer Claims do not satisfy the broad definition of "interest" embraced by circuit courts primarily because those definitions lose meaning when third-party claims are at issue. The broad interpretation requires a "relationship between the[ ] right to demand . . . payments from the debtors and the use to which the debtors had put their assets" and that the obligations "flow from ownership of property." *Trans World*, 322 F.3d at 290; *Folger*, 209 F.3d at 258; *Leckie*, 99 F.3d at 582. Here, however, the Non-Settling Insurers have no right to demand payment from FBS and the Settling Insurers do not own the property from which their contribution obligations flow. Even if the Inter-Insurer Claims are "grounded, at least in part," in how FBS decided to employ its assets (buying the Repurchased Policies), that employment of

assets gave rise to a type of right that is disconnected from the FBS's decision. *See Leckie*, 99 F.3d at 582. Consequently, the Inter-Insurer Claims are not an "interest" in FBS's property under the broad interpretation applied by various circuit courts.

Turning to the cases involving third-party claims, there appear to be two ways for such claims to be an "interest" under § 363(f). One is that the claims are truly "derivative" in the sense that the third party is asserting the debtor's own rights as a way of collecting against the insured. *See Forty-Eight*, 133 B.R. at 978. However, that is not the case here. The CSA is a separate contract that cannot be equated with the insured's rights. In addition, "the right of equitable contribution belongs to each insurer individually" and "is not equivalent to standing in the shoes of the insured." *Polygon*, 143 Wash. App. at 794 (2008); *see also Mut. of Enumclaw*, 164 Wash. 2d at 418. While contribution claims do require concurrent obligations to the insured, *Mutual of Enumclaw*'s reasoning demonstrates how obligations between insurers are not the same as obligations to the insured. 164 Wash. 2d at 422-23. Contribution claims presuppose that obligations to the insured have already been satisfied, leaving only what the insurers owe between each other. *Id*. at 423. In contrast, when a tort claimant obtains a judgment against an insured debtor, they may step into their shoes and assert the debtor's own rights against an insurer that has not fulfilled its obligations. *See Forty-Eight*, 133 B.R. at 978. The Inter-Insurer Claims therefore do not amount to the insurers exercising FBS's rights.

The second possible way that that third-party claims could constitute an "interest" is that the claims seek compensation directly from policy proceeds that the debtor owns. But here the Non-Settling Insurers' contractual and equitable claims would be paid from the Settling Insurers' general assets and would only indirectly erode the limits on the Repurchased Policies, as FBS itself explains. *See* Dkt. #29, at 20; *In re Johns-Manville Corp.*, 600 F.3d 135, 154 (2d Cir. 2010)

(recognizing that an objector's contribution claims do not, "as a legal matter, seek to collect from the insurance policies" that were issued to the debtor.). Even to the extent that the Inter-Insurer Claims can be analogized to direct claims to proceeds, FBS only owns the portion of its policies' proceeds that it is properly entitled to. *See Adelphia*, 364 B.R. at 527 (the fact that the policy and contractual rights to the proceeds are property of the estate "does not mean *all* of the policy proceeds belong solely to the estate."). If the Non-Settling Insurers have a *de facto* interest in the Repurchased Policies' proceeds, FBS is not entitled to that portion of the proceeds and § 363(f) does not apply. *See id.*

In addition to the Inter-Insurer Claims falling outside any definition of "interest," allowing sales free and clear of third-party claims would conflict with Ninth Circuit precedent. While *American Hardwoods* and *Lowenschuss* did not discuss § 363(f), those cases are still instructive insofar as they rejected lenient approaches to bankruptcy courts' authority to interfere with third-party claims. *See Am. Hardwoods*, 885 F.2d at 626; *Lowenschuss*, 67 F.3d at 1402. While ordering a sale free and clear of third-party claims and enjoining such claims are not identical actions, FBS has not explained how any differences between them excuse the inconsistency of allowing only one. *American Hardwoods* recognized that mere "semantic distinction[s]" between different types of judicial actions are insignificant if the end result is a "legal bar to . . . recovery," a principle that seems applicable here. 885 F.2d at 626. Indeed, *MacArthur* acknowledged that "[t]he authority to issue [an] injunction is [] a corollary to the power to dispose of assets free and clear and to channel claims to the proceeds." 837 F.2d at 93. Prohibiting the former while allowing the latter would make little sense.

Viewed holistically, Ninth Circuit precedent indicates that the Bankruptcy Code's scheme permits releasing or enjoining third-party contribution claims only when § 524(g)'s

requirements have been satisfied. *Compare In re Plant Insulation Co.*, 734 F.3d 900, 910 (9th Cir. 2013) (holding that injunctions issued under § 524(g) may apply to contribution claims of non-settling insurers) *with Lowenschuss*, 67 F.3d at 1402 n.6 (holding that § 524(g) was intended as a "narrow rule" allowing third-party claim injunctions only when "numerous requirements" are met). In light of this, the Repurchased Polices cannot be sold free and clear of the Inter-Insurer Claims, regardless of whether the vehicle is § 105(a) or § 363(f). The Bankruptcy Court erred in approving the sale.

b.      *Whether the Sale was Consistent with § 363(f)(1)*

Even if the Inter-Insurer Claims were an "interest" in FBS's property, the Non-Settling Insurers argue that none of the five permissible bases for approving a free and clear sale under § 363(f) were satisfied. The only basis identified by the Bankruptcy Court for releasing the Inter-Insurer Claims was § 363(f)(1), which allows a sale if "applicable nonbankruptcy law permits sale of such property free and clear of such interest." The Non-Settling Insurers argue that this condition was not met because the legal authorities cited by the Bankruptcy Court— RCW 7.60.260 and *King County v. Travelers Indemnity Co.*, No. 14-CV-1957 BJR, 2018 WL 1792189 (W.D. Wash. Apr. 16, 2018)—do not support the sale. The Non-Settling Insurers assert that neither authority applies to these facts. Instead, they argue that the controlling case is *Franklin v. Kaypro Corp.*, which requires that the non-settling parties' interests be protected to a degree that they were not here. *See* 884 F.2d 1222, 1225 (9th Cir. 1989)

FBS responds that *King County* is applicable to these facts. In addition, FBS contends that the requirements from *King County* were met because the Settlement contains a "judgment reduction clause" that protects the Non-Settling Insurers' contribution rights. That clause provides, in part, that "any judgment on any Claim against one or more Non-Settled Insurers

shall be reduced by the adjudicated amount of any Contribution Claim such Non-Settled Insurer would have been able to successfully assert against the Insurers." In addition, FBS argues "the Liquidating Trust will directly handle certain historically settled asbestos related claims and substantially underinsured claims without tendering those claims to Appellants," thus alleviating their costs and risk. Dkt. #29, at 16.

As explained in *King County*, courts have "the inherent equitable power to enter an order precluding subsequent claims for contribution ... by non-settling parties." 2018 WL 1792189, at *2. However, "a bar order is only appropriate where (1) the proposed settlement is reasonable; and (2) the interests of the non-settling defendants are protected." *Id.*; *see also Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). "The reasonableness requirement is not a high hurdle; ... the Court must simply ensure that the settlement is not patently collusive or inadequate." *Id.* (internal quotation marks omitted). However, the protection requirement is more stringent. Non-settling parties must have "adequate protection against an unfair allocation of liability." *Id.* (citing *Franklin*, 884 F.2d at 1231 (holding that non-settling parties may only be compelled to pay "the percentage of the total amount for which they are responsible.")). RCW 7.60.260, meanwhile, provides that "estate property" may be sold "free and clear of liens and of all rights of redemption . . . ."

Here, RCW 7.60.260 is inapplicable. As previously discussed, the Inter-Insurer claims are not "property of the estate" nor do they constitute liens or rights of redemption. *See* RCW 7.60.260(2). However, because it lays out the correct standard for when a court can issue an order barring contribution claims, *King County* is a relevant legal authority. 2018 WL 1792189, at *2. While the Non-Settling Insurers argue that *King County* is inapplicable because the parties in that case did not dispute that the settlement was reasonable and sufficiently protective, this

factual difference does not invalidate the legal framework the court applied. *Id*. at *2-3. Indeed, far from being inconsistent cases, *King County* actually cites *Franklin*, the case that the Non-Settling Insurers claim is the proper governing authority. *Id*. at *2. Both cases are part of a single line dealing with orders barring contribution claims. *See, e.g., id.*; *Canal Indem. Co. v. Glob. Dev., LLC*, No. 2-14-CV-00823-RSM, 2015 WL 347753, at *3-4 (W.D. Wash. Jan. 26, 2015); *Bank of Am. v. Travelers Indem. Co.*, No. C07-0322RSL, 2009 WL 529227, at *1 (W.D. Wash. Mar. 2, 2009); *Franklin*, 884 F.2d at 1225.

Nonetheless, the Settlement in this case was not permissible under the requirements of *King County* and *Franklin*. Even if it were reasonable, the Settlement does not adequately protect the interests of the Non-Settling Insurers. The CSA sets out specific percentages of defense costs and establishes that each insurer must pay indemnity costs on a "pro rata by time basis" in the event of an asbestos claim. However, the Settlement's judgment reduction clause only offsets costs if an asbestos claimant procures a judgment against one of FBS's insurers. Consequently, if the Non-Settling Insurers were to *successfully* defend against a claim, there would be no way for them to offset such costs under the judgment reduction clause. Furthermore, in the event that a plaintiff's claim were settled, the Non-Settling Insurers would have no way of fairly reducing their share. All asbestos claims against FBS so far have resulted in settlements. Dkt. #32, at 14. Given these facts, the judgment reduction clause provides almost no protection.

To account for the problems created when a claim is settled, the Bankruptcy Court surmised that "awareness of the judgment reduction provision will inform what judgment could be obtained against the non-settling insurer at trial and, therefore, what settlement amount would be acceptable to the claimant." Dkt. #1, at 20. A claimant could then "seek the remainder of what he or she could have been awarded or settled for, but did not because of the contribution claim,

from the liquidating trust," which would evaluate the claimant's application. *Id.* at 21. This highly speculative description places far too much faith in a rickety system that protects the Non-Settling Insurers with theoretical rather than actual rights. It also ignores the situation where an insurer successfully defends FBS and overlooks the fact that, once the trust runs out, the Non-Settling Insurers will have no leverage to offset the amount of settlements. Consequently, the Settlement fails to adequately protect the Non-Settling Insurers and the sale free and clear of the Inter-Insurer Claims was impermissible under § 363(f).

**5. Good Faith**

The Non-Settling Insurers argue that the Bankruptcy Court improperly found that the sale free and clear of the Inter-Insurer Claims was made in good faith. They contend that the Bankruptcy Court erroneously failed to provide time for discovery or hold an evidentiary hearing. The Non-Settling Insurers also argue that the evidence the Bankruptcy Court did consider failed to illustrate the actual value of the Repurchased Policies. According to the Non-Settling Insurers, this absence of evidence masked the fact that as much as $56 million of coverage would be lost if the Settlement were upheld and the sale carried out. Finally, the Non-Settling Insurers assert that the Settlement and sale were negotiated by the very parties who would partly benefit from them, suggesting collusion and a loss of overall value to asbestos claimants and FBS's other insurers.

While these arguments regarding good faith are troubling, the Bankruptcy Court's order has already been reversed on other grounds. Consequently, the Court will not address the issue of good faith.

## CONCLUSION

For the above reasons, the Non-Settling Insurers' Appeal is GRANTED and the order of the Bankruptcy Court Approving the Settlement Agreement with Certain Insurers, the Free and Clear Sale of the Policies to the Settling Insurers, and Enjoining the Inter-Insurer Claims is REVERSED.

IT IS SO ORDERED.

Dated this 8th day of March, 2019.

Ronald B. Leighton
United States District Judge